737 P.2d 1377

Nancy SEDILLO, individually and as personal representative of the Estate of Tony Barela Sedillo, deceased; Toni Sedillo a minor, by and through her next friend and mother, Nancy Sedillo; Estate of Timothy Sedillo; Michael Sedillo, a single man; Matthew Sedillo, a minor, by and through his next of friend and mother, Theresa Fernandez; Eleanor Sedillo, mother of Tony Barela Sedillo, Plaintiffs-Appellants,

v.

CITY OF FLAGSTAFF, an Arizona incorporated city, Defendant-Appellee.

No. 1 CA–CIV 8536.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 3, 1987.

Reconsideration Denied March 27, 1987.

Review Denied June 2, 1987.

Aspey, Watkins & Diesel by Louis M. Diesel, Kaign N. Christy, Donald H. Bayles, Jr., Flagstaff, for plaintiffs-appellants.

Mangum, Wall, Stoops & Warden by Daniel J. Stoops, Robert B. Van Wyck, Zachary Markam, Flagstaff, for defendant-appellee.

## OPINION

CORCORAN, Judge.

The City of Flagstaff (City) was found liable in a wrongful death action brought by the Sedillos. Plaintiffs timely filed a motion for additur, or in the alternative, a motion for new trial on the issue of damages. The trial court denied the motions. Plaintiffs timely appealed to this court. We have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1). The City did not cross-appeal.

The issues presented on appeal are:

1. Whether appellants, who were not awarded any damages in the trial court, are aggrieved parties with standing to appeal to this court;

2. Whether the trial court's denial of appellants' motion for additur, or in the alternative, for a new trial, amounted to an abuse of discretion;

3. Whether the City of Flagstaff is entitled to a new trial on the issue of liability when it did not appeal from the judgment and did not request a new trial in its answering brief, but only verbally requested a new trial on the issue of liability in its oral argument in this court.

We conclude that those appellants who did not receive any damages in the trial court, despite the jury's unequivocal finding that the City was liable for the wrongful death of the decedent, are aggrieved parties with standing to appeal. We further conclude that the amounts of appellants' verdicts were not supported by the weight of evidence adduced in the trial and that the trial court's denial of additur or of a retrial was an abuse of discretion. We therefore reverse. We also conclude that the City is not entitled to a new trial on the issue of liability.

### 1. *Facts*

Early Sunday morning, January 9, 1983, appellant Nancy Sedillo was driving home with her husband, Tony, and their three-year-old daughter, also named Toni. While traveling on Cedar Hill in Flagstaff, Nancy Sedillo encountered a large patch of ice on the road and lost control of the vehicle. The car skidded across the ice, hit an embankment and flipped upside down. Mr. Sedillo, who at the time of the accident was asleep in the front passenger seat, was thrown from the car and killed. Nancy and Toni Sedillo both escaped serious injury.

On the night of the accident, the road was generally dry except for the patch of ice which had formed due to water overflowing from a culvert located alongside the road. The City Public Works Department had attempted to temporarily repair the culvert the day before the accident; however, the repairs did not prevent the formation of ice on the road.

Mrs. Sedillo, her daughter Toni, the decedent's mother and three sons from a former marriage of the decedent filed this wrongful death action in the superior court on December 9, 1983 alleging that the City negligently constructed and maintained the culvert from which the water overflowed, thereby forming an ice patch, and that that negligence caused Mr. Sedillo's death.

Disputed issues of material fact regarding the City's liability were considered by the jury. The jury resolved these liability issues by returning verdicts in favor of all six Sedillos, but only awarded damages to three of them: Nancy Sedillo, decedent's widow, was awarded $5,000; Matthew, decedent's minor son from a former marriage, was awarded $5,000; and Toni, his daughter, was awarded $50,000. No damages were awarded to decedent's mother or to his remaining two adult sons. The jury also found in favor of decedent and awarded $4,031.65 to his estate for funeral and burial expenses and for loss of property in the accident.

Following the trial, appellants moved for additur, or in the alternative, for a new trial, claiming that the jury awards were insufficient and were contrary to the evidence of damages presented at trial. The trial court denied the post-trial motions and this appeal followed.

### 2. *Standing*

As an initial matter, the City argues that those appellants who were not financially dependent upon the deceased—Eleanor Sedillo, the deceased's mother, and the deceased's two adult sons, Michael Sedillo and Tim Sedillo (now deceased)—are not "aggrieved parties" and therefore do not have standing to appeal to this court because they have not been denied a "property right" as a direct result of the trial court's judgment. The City cites rule 73(a), Arizona Rules of Civil Procedure. The City's reliance on rule 73(a) is in error. That rule was abrogated effective January 1, 1978 and was replaced by rule 1, Arizona Rules of Civil Appellate Procedure. However, that fact does not affect the result reached herein.

■ The City's argument is misplaced. Arizona's Wrongful Death Statute, A.R.S. §§ 12–612, *et seq.*, provides each appellant with a claim for compensatory damages due to a decedent's death. Such damages can include allowances for loss of companionship, comfort and guidance. *Boies v. Cole*, 99 Ariz. 198, 407 P.2d 917 (1965).

Because the jury found that the City was responsible for the death of Tony Sedillo, each appellant has been vested with a cognizable right to compensation and each appellant has standing to appeal to this court. A person who is dissatisfied with the amount of judgment is an aggrieved party entitled to appeal. *Cornell v. T.V. Dev. Corp.*, 17 N.Y.2d 69, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966). When a party is not complaining about the amount of damages awarded him, but is instead complaining that he was awarded *no* damages whatsoever, that party is clearly "aggrieved" within the meaning of rule 1, Arizona Rules of Civil Appellate Procedure. Therefore, the three appellants who did not receive any damages in the trial court have standing to appeal to this court.

### 3. *Damages*

■ The question of whether additur should be granted in any case is within the discretion of the trial court, and a reviewing court will not reverse the trial court's ruling absent a clear abuse of that discretion. *Bustamante v. City of Tucson*, 145 Ariz. 365, 701 P.2d 861 (App.1985). However, each case regarding additur must stand on its own peculiar facts, and the ultimate test of whether additur was appropriate will always be whether justice resulted. Any case in which the grant or denial of additur works an *unjust result* must be reversed. *Sequoia Mfg. Co. v. Halec Constr. Co.*, 117 Ariz. 11, 25, 570 P.2d 782, 796 (App.1977). In this case, those appellants who were granted some damages were granted unjustly small damages in light of the evidence adduced at trial. Therefore, the trial court abused its discretion by refusing to grant additur or a new trial.

Moreover, three members of the decedent's family received no damages, although the jury established the City's lia-

bility as to those appellants by its verdicts. The jury was therefore under an obligation, by virtue of A.R.S. § 12–613, to give such damages as it deemed "fair and just" with reference to the injuries suffered. In *Boies*, the Arizona Supreme Court construed A.R.S. § 12–613 in such a way as to avoid the application of comparative negligence principles to wrongful death actions. Comparative negligence principles were not recognized in Arizona at the time *Boies* was decided. *Boies* was written in 1965—19 years before our Uniform Contribution Among Tortfeasors Act (UCATA) became effective. A.R.S. §§ 12–2501, *et seq.* The present case was filed on December 9, 1983 —also before that act became effective.[1]

Those appellants who were not granted any damages—the decedent's mother and his two adult sons—are statutory beneficiaries under Arizona's wrongful death statute. A.R.S. § 12–612; *see, e.g., Begay v. City of Tucson*, 148 Ariz. 505, 508, 715 P.2d 758, 761 (1986). The evidence concerning the decedent's close family relationships was not impeached, contradicted or refuted by any substantive evidence offered by the City.

As to the statutory beneficiaries' economic losses caused by the death, the evidence established that, at his death, the decedent was a full-time supervisor for the Arizona Department of Transportation, and that in 1979 he became a concrete inspector to broaden his background and develop his expertise. He had been steadily employed with the State of Arizona for 14 years. Relying on acceptable economic analyses, appellant's financial consultant estimated the deceased's future earnings to approximate $1.2 million to age 65, and he testified that this amount had a present value of approximately $237,300. The financial consultant's accuracy was not impeached.

■ By statute, the jury was also authorized to consider the statutory benefi-

---

1. The City raised the defense of contributory negligence in the trial court. The jury was instructed on that defense; however, the jury found in favor of plaintiffs-appellants on the issue of liability. Appellants assert claims of the erroneous admission of highly prejudicial evidence purportedly admitted on the issue of

liability, which, if considered by the jury in a comparative negligence setting, could have substantially reduced the awards. We need not consider the admissibility of this evidence since the verdicts on the issue of liability are affirmed.

ciaries' loss of love, affection, companionship, consortium, personal anguish and suffering. *Southern Pac. Transp. Co. v. Lueck,* 111 Ariz. 560, 535 P.2d 599 (1975), *cert. denied,* 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976). In *Boies,* the Arizona Supreme Court held that the legislature's intent in enacting A.R.S. § 12–613 was to specifically include allowances for loss of companionship, comfort and guidance by a decedent's statutory beneficiaries. 99 Ariz. at 203, 407 P.2d at 920.

In addition to the financial consultant's unimpeached testimony that the present value of decedent's potential future income was $237,300, uncontradicted evidence was also presented regarding the decedent's close relationships with his family members. This case is not comparable to *Quinonez v. Andersen,* 144 Ariz. 193, 696 P.2d 1342 (App.1984), which the dissent cites because our court affirmed an award of no damages to the husband of the deceased. In *Quinonez,* the court affirmed the $0 award because "under all of the circumstances, the jury may have concluded that all that Mr. Quinonez lost was a punching bag and a just and fair award for this loss was zero." 114 Ariz. at 198, 696 P.2d at 1347.

In contrast, the unimpeached evidence in the present case demonstrates that the Sedillos all enjoyed close family relationships with decedent, and all suffered substantial emotional, and possibly financial, injuries due to his death. For example, Nancy Sedillo testified that in regard to "his boys, he would give them his last dollar if they needed it. And with little Toni, he worshipped her, he just lived for her." Decedent's brother testified that "Tony [decedent] loved his children with a passion. He ... was working just for them. He wanted to make sure that their future was secure." In addition, Matthew and Michael Sedillo testified that they were very close with their father, lived with him for one to two months each summer after their parents divorced, and relied on him for guidance. Tony's ex-wife confirmed these good family relations, and, in response to her attorney's question whether she had any doubts that Tony "would have put Matthew and Mi-

chael, Timothy, all of them through college," she stated that she had "no doubt at all." Tony's mother also enjoyed a good relationship with her son, who, according to the testimony, "visited her daily after work." George Sedillo testified that his mother "misses him [Tony] very much, and [I] think that that is one of the reasons that she is in declining health."

▉ Therefore, ample testimony demonstrated that each of the plaintiffs suffered emotional and possibly financial losses due to Tony's death. Due to the extremely low damage awards, despite the testimony regarding personal anguish, loss of companionship, and Tony's potential future earnings, the jury may have improperly considered comparative negligence principles when it determined the awards. The jury might have believed that the statutory beneficiaries were entitled to reduced recoveries because of the testimony regarding Nancy Sedillo's possible driving above the speed limit and her .08 blood alcohol level two hours after the accident. Yet, once the jury established the City's liability, it was only empowered to award those damages it considered fair and just, and was not free to apply comparative negligence principles. *Boies.*

The damages awarded to those appellants who received some damages are legally insufficient in light of the unrefuted evidence presented at trial. Those appellants who did not receive any damages were also entitled to some damages in light of the evidence established at trial and by virtue of their status as statutory beneficiaries.

▉ However, for those appellants who did not receive any damages, additur was not an available remedy because Arizona law clearly dictates that a court can grant additur only where the jury has awarded some damages. *State v. Burton,* 20 Ariz.App. 491, 496, 514 P.2d 244, 249 (1973). The trial court abused its discretion in refusing to grant additur or a new trial as to those appellants who were awarded some damages and abused its dis-

cretion in denying a new trial to those appellants who were awarded no damages.

### 4. Request For A New Trial

■ An appellate court is very reluctant to disturb the trial court's exercise of discretion in granting or denying a new trial. *City of Glendale v. Bradshaw*, 114 Ariz. 236, 238, 560 P.2d 420, 422 (1977). However, if an appellate court finds that the damages awarded in a wrongful death action were grossly inadequate, it should remand the case for a new trial on the issue of damages. *State v. Watson*, 7 Ariz.App. 81, 88, 436 P.2d 175, 182 (1967).

At oral argument, counsel for the City argued for the first time that if this court decides to remand the case for a new trial on the issue of damages, it should also remand for a new trial on the issue of liability. However, the City had not raised that issue in its answering brief.

■ Arguments for the granting of a new trial which are not urged in a party's brief will be treated as waived. *Tucker v. Cox*, 282 Ala. 489, 213 So.2d 222 (1968); *see generally* 5 C.J.S. *Appeal and Error* § 1324(1) (1958). Under rule 13(a), Arizona Rules of Civil Appellate Procedure, the City was required to fully brief and discuss all the issues which it deemed relevant to this case.

Moreover, the Arizona Supreme Court's recent decision in *Begay* clearly mandates that in order for the City to have obtained a new trial on the issue of liability in this wrongful death action, it would have been necessary for the City to have filed a conditional cross-appeal.

In *Begay*, the City of Tucson was found liable in a wrongful death action. The plaintiffs filed a motion for a new trial on the issue of damages. The trial court granted the motion because the award of damages was inadequate. The City appealed. The Court of Appeals, Division Two, in a memorandum decision, remanded the case for a new trial on *both* liability and damages. The supreme court held that the court of appeals erred in refusing to uphold the trial court's order limiting a new trial to the issue of damages only. 148 Ariz. at 508, 715 P.2d at 761.

In *Begay*, the City argued that evidence of contributory negligence by the deceased was too closely interwoven with evidence regarding damages to allow retrial on the issue of damages only, and that therefore the new trial should be as to all issues. The supreme court stated:

> Ordinarily the position of the City would be sound, but it has overlooked the nature of this case as a wrongful death action and its legal posture in the appellate courts. The City and Court of Appeals focused on the concept of liability and damages having been intertwined. This proposition would be supportable if we were dealing with the child of the deceased as a separate plaintiff. A wrongful death action, however, is one action for damages with one plaintiff and one judgment. *Nunez v. Nunez*, 25 Ariz. App. 558, 545 P.2d 69 (1976); A.R.S. § 12–612. The amount of damages recoverable in the action is distributed to the parents and children of the deceased in proportion to their damages. A.R.S. § 12–612. The proportion of damages which each statutory beneficiary is entitled to recover is not based on an equal division among the statutory beneficiaries. It is based on their individual pecuniary loss suffered by reason of the wrongful death. *Nunez v. Nunez, supra.*
>
> The City did not contest on appeal the judgment which awarded damages to the parents of the deceased. By so doing, the City has left standing the judgment on liability. The new trial granted by the trial judge was on the issue of damages for the child beneficiary. If the City wished to challenge the issue of liability, it was necessary for it to appeal from the single judgment in the case. *See Nunez v. Nunez, supra.* Since it did not appeal from anything other than the order granting a new trial to the child beneficiary, there is no basis for setting aside the single judgment which established liability by the City for its acts.

148 Ariz. at 508, 715 P.2d at 761. *See generally* 1 *Arizona Appellate Handbook*

**484**

§ 3.2.2.2 (2d ed. 1986) (relating to the rules governing cross-appeals and cross-issues).

 The fact that there is a single judgment does not, however, preclude an individual beneficiary in a wrongful death action from contending that the amount awarded to him or her was legally inadequate, irrespective of the merits of the award to other statutory beneficiaries. *Quinonez.* If a beneficiary can establish that his individual award was legally defective, he is entitled to obtain a new trial on what he individually is entitled to recover. 144 Ariz. at 198, 696 P.2d at 1345.

### 5. *Conclusion*

The only issue on retrial will be damages. Therefore, the numerous other issues presented in the briefs need not be addressed.

This cause is reversed and remanded for a new trial as to all appellants on the issue of damages only.

CONTRERAS, J., concurs.

JACOBSON, Judge, concurring in part, dissenting in part:

I concur that the amount of damages awarded to the widow, Nancy Sedillo, was inadequate and obviously the result of the jury attempting to apply the principles of comparative negligence to a case which was tried under contributory negligence principles.[1] I likewise agree that the supreme court's ruling in *Begay v. City of Tucson,* 148 Ariz. 505, 715 P.2d 758 (1986), requires that a new trial on the issue of Nancy Sedillo's damages be limited to those damages only.

I disagree that the award of the jury as to the other statutory beneficiaries requires reversal, as these awards are, contrary to the majority opinion, completely supported by the evidence and are not tainted by the comparative/contributory negligence misunderstanding which influenced the inadequate verdict to Nancy Sedillo.

In reaching this conclusion, some additional facts are relevant. Timothy Sedillo died two weeks before trial and was 21 years old at the time of his death. At the time of his father's death, Timothy was completely emancipated and financially independent of his father. Timothy and his brothers Michael and Matthew had not lived with their father since 1970.

Michael Sedillo, like Timothy, at the time of his father's death was completely emancipated and financially independent of his father.

Matthew Sedillo was 14 at the time of his father's death and his father's sole financial contribution to Matthew was in the form of child support in an undisclosed amount.

Eleanor Sedillo, Tony Sedillo's mother, was 80 years old at the time of trial, was not financially dependent upon her son, Tony, and did not even appear or testify at trial.

The deceased, Tony Sedillo, was employed as an inspector/supervisor with the Arizona Department of Transportation earning the sum of $21,500 per year. Although Dr. Wilt, an economic analyst, estimated Tony's future earnings to approximate $1.2 million, with a present value of $237,300, this estimate required Tony's earnings with the Department of Transportation to be approximately $91,000 by the year 2006.

While the majority opines that the sum of $237,300 was "lost by the statutory beneficiaries," there is no evidence that any beneficiary, other than Nancy Sedillo, would share in this community asset. In fact, the inferences to be drawn are that at least the emancipated statutory beneficiaries would not share in this asset as no financial contributions were being made to them at the time of Tony's death.

With this financial information, the jury awarded Toni Sedillo, the five-year-old daughter, $50,000; Matthew Sedillo, $5,000; and made no award to the deceased

---

**1.** This observation is based upon the arguments of appellee's counsel before this court, contending the jury's award as to Nancy Sedillo could be justified on the basis that the jury could apply comparative negligence principles.

son Timothy, the emancipated son Michael, or the financially independent mother Eleanor.

A.R.S. § 12–613 provides:

In an action for wrongful death, the jury shall give such damages *as it deems fair and just* with reference to the injury resulting from the death to the surviving parties who may be entitled to recover . . .

(emphasis added).

The law, I thought, was clear that the amount of damages which a jury can award for such non-monetary items as loss of affection, love, companionship, consortium, personal anguish and suffering, is entirely within the providence of the jury. *Southern Pac. Transp. Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975) *cert. denied*, 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976).

Moreover, the granting or denial of a motion for new trial for lack of damages, or an additur for inadequate damages, is left to the greatest possible discretion of the trial judge and that discretion will not be disturbed on appeal except in cases where clearly abused. *Bond v. Cartwright Little League, Inc.*, 112 Ariz. 9, 536 P.2d 697 (1975).

Applying these principles to this case and turning first to the statutory beneficiaries, who received no award (Timothy, Michael and Eleanor), it is clear that the jury could and did consider their lack of financial dependency upon the deceased in arriving at their verdict. Although there was testimony that these beneficiaries loved and were loved in return by the deceased, the amount of this loss was particularly within the discretion of the jury.

The majority sidesteps this issue by holding that "those appellants who did not receive any damages were also entitled to some damages . . . by virtue of their status as statutory beneficiaries." No citation of authority is given for this holding, probably because it is contrary to Arizona law.

As was stated by the supreme court in *Begay v. City of Tucson:*

[T]he proportion of damages which each statutory beneficiary is entitled to recover is not based on an equal division among the statutory beneficiaries. It is based on their *individual pecuniary loss* suffered by reason of the wrongful death. (emphasis added).

*Id.* 148 Ariz. at 508, 715 P.2d at 761.

It necessarily follows that if no pecuniary loss is suffered, no recovery is warranted, as this court noted in *Quinonez for and on Behalf of Quinonez v. Andersen*, 144 Ariz. 193, 696 P.2d 1342 (App.1985), by affirming an award of no damages to a statutory beneficiary (husband of the deceased) in a wrongful death action.

Thus, contrary to the majority opinion that the evidence does not justify a zero award to these beneficiaries, the jury could properly consider that Timothy was dead at the time of trial, that Mrs. Eleanor Sedillo did not even testify at trial, and that Michael was emancipated at the time of his father's death. At least the trial judge, under these circumstances, did not clearly abuse his discretion in denying a new trial as to these beneficiaries.

Turning to Matthew Sedillo, again the evidence is uncontradicted that the only financial contribution made by his father was a monthly child-support payment in an unknown amount. He had not lived with his father since he had been approximately one year old. He was 14 years old at the time of his father's death and had a legal right to support for only an additional four years. While I might consider an award of $5,000 under these circumstances to be low, a jury and a judge who had an opportunity to see the witnesses thought the award was justified. Again, I see no clear abuse of discretion.

Finally, the award of $50,000 to Toni Sedillo, the deceased's five-year-old daughter, must be considered. Again, I, had I been on the jury, might have granted more. The majority, however, is unable to articulate any specific evidence which would justify an increase in this award other than the conclusionary statement that "the damages awarded to these appellants who received some damages are legally insuffi-

cient in light of the evidence established at trial." The judge and jury which originally heard this evidence came to a contrary conclusion. In absence of a more concrete statement of reasons to find otherwise, I would allow the jury determination to stand.

In summary, because I believe the jury from a legal misunderstanding reduced Nancy Sedillo's award, I agree that a new trial as to her damages is warranted. As to the balance of the statutory beneficiaries, the jury was justified in its awards.