166 P.3d 118

**STATE of Arizona, Respondent,**

v.

**George TAYLOR, Petitioner.**

**Nos. 1 CA–CR 06–0193 PRPC, 1 CA–CR 06–0194 PRPC.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 28, 2007.

Jon R. Smith, Yuma County Attorney, By Charles Platt, Deputy County Attorney, Yuma, Attorneys for Respondent.

Michael W. McCarthy, Interim Yuma County Public Defender, Yuma, Attorneys for Petitioner.

## OPINION

IRVINE, Judge.

¶ 1 Petitioner George Taylor ("Taylor") seeks review of the trial court's orders summarily dismissing his petitions for post-conviction relief. For the reasons set forth below, we grant review and grant relief. In this opinion we hold that "financial resources," as used in Arizona Revised Statutes ("A.R.S.") section 11–584(C) (Supp.2006) and Arizona Rules of Criminal Procedure 6.4(b) and 6.7(d), does not include Taylor's "imputed income." We also reiterate that before a court can order an indigent defendant to pay to offset the cost of legal services, the court must make factual findings that the defen-

dant has financial resources that enable the defendant to make such payments, and that the defendant is able to pay the amounts ordered without incurring substantial hardship to the defendant or to his or her family. Because the trial court assessed attorney fees against Taylor based only on Taylor's imputed income, we vacate the orders for attorney assessment fees.

## FACTS AND PROCEDURAL HISTORY

¶2 The relevant facts are not disputed. On March 2, 2005, in Yuma County cause number S1400CR200500130 ("first case"), the court placed Taylor on probation after he pled guilty to shoplifting, a class 1 misdemeanor, and to possession of drug paraphernalia, a class 6 felony. About two months later, in Yuma County cause number S1400CR200500532 ("second case"), the State charged Taylor with shoplifting with two prior convictions, a class 4 felony, and possession of drug paraphernalia, a class 6 felony. Taylor's probation officer filed a petition to revoke probation in the first case. Taylor resolved both cases by pleading guilty to attempted shoplifting with two prior convictions, a class 5 felony, and by admitting that he violated his probation.

¶3 At the consolidated disposition and sentencing hearing, in the first case the court revoked probation and sentenced Taylor to jail for shoplifting, and to prison for possession of drug paraphernalia. The court also ordered an attorney assessment fee[1] of $650.00 for the original prosecution and an additional attorney assessment fee of $250.00 for the probation violation proceeding. In the second case, the court sentenced Taylor to 1.5 years in prison. The court also ordered an attorney assessment fee of $650.00. Taylor objected to the attorney assessment fee orders in both cases. He argued that he did not have the ability to pay the fees. The trial court looked at Taylor's current finan-

cial circumstances and found that because Taylor appeared to be an "able-bodied" male, he could be expected to earn minimum wage upon his release from prison.

¶4 After disposition and sentencing, Taylor timely commenced post-conviction relief proceedings in both cases.[2] He argued that the court's imposition of attorney assessment fees was error because the court did not comply with either Rule 6.4 or Rule 6.7(d) and the "record does not support any ability on the part of the defendant to pay attorney fees without causing undue hardship." Taylor pointed out that although the public defender had been appointed to represent him, he never testified about his financial resources nor did he ever complete a questionnaire about his financial resources, as required by Rule 6.4(b).

¶5 Because the court had not complied with Rule 6.4, Taylor argued, the court could not later assess attorney fees pursuant to Rule 6.7(d), which permits an order to offset the costs of legal services when "in determining that a person is indigent under Rule 6.4(a), the court finds that such person has financial resources which enable him or her to offset in part the costs of the legal services[.]" Having failed to make the required findings, Taylor argued, the court could not order the attorney assessment fees. Taylor also argued that the fees ordered were untenable based on the record. Taylor noted that the only evidence in the record was a payment ability evaluation form he completed, apparently at the request of the probation department, in which he listed no assets or income and expenses of $250.00 per month. He argued that speculation about future ability to pay after his release from prison did not satisfy the requirements of Rule 6.7(d).

¶6 The State filed a response and argued that Taylor was not entitled to relief. First, the State contended, Taylor had been work-

---

1. In the record this fee is referred to variously as an attorney assessment fee or attorney reimbursement fee. We will refer to it as an attorney assessment fee.

2. Instead of consolidating the matters and filing one set of pleadings, Taylor and consequently the State, filed essentially the same pleadings in both

cases. This court sua sponte consolidated the petitions for review because the issues and arguments in each case are the same, and the cases were consolidated for disposition and sentencing. For the sake of simplicity we will discuss these matters as though they were presented in a single petition for review.

ing in the prison kitchen since his incarceration and thus the record supported the trial court's finding that Taylor was capable of working. Next, the State argued that until Taylor was released from prison, his attorney assessment fees were only conditional. Finally, the State argued that because Taylor had not established that "he will be unable, once he is released from confinement, to pay attorney assessment fees without incurring substantial hardship[,]" he had not established a colorable claim. In any event, the State concluded, the court's observations that Taylor was an "able-bodied" man of working age, and the fact that the "judicial assistance unit of the court will only impose a payment plan ... that petitioner will be able to afford[,]" were sufficient findings pursuant to Rule 6.7(d) to support the orders for attorney assessment fees.

¶ 7 After the court considered the pleadings, it summarily dismissed Taylor's petition for post-conviction relief. Although the court acknowledged Taylor's arguments, the court concluded that his claim was not ripe because the "sentencing court could not have known whether the defendant had the ability to pay attorney fees assessed until he is released from prison when a determination is made as to how much he might pay and on what schedule; that is, weekly, monthly and the amount each week or month."

¶ 8 Taylor timely petitioned this court for review. He argues that a court cannot assess attorney fees without first making the determinations required by Rules 6.4 and 6.7(d) of the Arizona Rules of Criminal Procedure. Taylor complains that the court refused to allow him to present evidence of his financial resources, which would have established that he had no financial resources to pay to offset any portion of the cost of legal services, and that any order to pay an offset would cause him undue hardship. Finally, Taylor argues that the court's summary dismissal of his petition for post-conviction relief because his claims were not ripe was erroneous and implicitly based on an improper interpretation of Rules 6.4 and 6.7(d).

¶ 9 The State responds and concedes that Taylor is indigent. The State argues that "[p]roof of [Taylor's] indigence does not answer the question of whether as an indigent person he can be required to pay the fee." The State asserts that the issue is whether, as an indigent, Taylor had financial resources sufficient to pay the fees ordered. The State then argues that Taylor's apparent ability to work in the future and thus earn income has a "present value." This present value is a "source of income" and thus a "financial resource" that the court properly found and relied on when it ordered attorney assessment fees.

¶ 10 As to the issue of undue hardship, the State argues that the court correctly, and in compliance with Rule 6.7(d), ordered that Taylor would only be required to pay the fees after his release from prison "in monthly installments in amounts that he and a representative of the court will negotiate and then memorialize in a contract." Because Taylor and the court's representative are required to negotiate in good faith, the State argues, the payment terms will not result in an undue hardship. Thus, the State concludes Taylor failed to present a material issue of law or fact and this court should deny relief.

## DISCUSSION

¶ 11 Because Taylor's objection below and the trial court's ruling fully frame the issues in this matter, we set forth the colloquy in full:

MR. MCCARTHY [DEFENSE COUNSEL]: Your honor, there's no indication in the record that the defendant has the ability to pay the fee and the defendant has not worked for quite a period of time. We can go on record, the defendant can take the stand relative to his indigency, but both cases are recommending the imposition of the $650 fee, your honor, ... and we're requesting that you make factual findings relative to not only the defendant's ability to pay but also that it will not cause undo [sic] hardship even if it is found that he does have some resources which are available to him, which we do not believe he does have, your honor.

THE COURT: Well, the intent is that—and it's in writing. I don't read everything that's in the sentencing order—that he

report to—contact the court's judicial assistance unit after his release from custody and make out a payment plan for reasonable payments, and they extend those—they're pretty liberal on extending those payments over a period of time and accepting pretty small amounts as long as people are regularly paying something. Given that, I find that that is not unduly burdensome to any able-bodied male person, and I know it will be tougher getting a job after prison than it is before, but I don't think that that is unduly harsh or unduly burdensome or something that any person generally in our society can't make payments on financial obligations that they have come to really impose upon themselves by virtue of their having committed crimes, so on and so forth.

MR. MCCARTHY: Your honor—respectfully, your honor, the statute though that governs the assessment of attorney's fees does require—it mandates that the court make a factual finding as to the—not only the defendant's resources but even with respect to his ability to pay and that any assessment made will not cause an undo [sic] hardship and, your honor, on the basis of future anticipation that he might be able to find some employment at some point in time, your honor, I do not think that that satisfies the requisites of the statute regarding a factual finding that any assessment will not cause an undo hardship currently on the defendant relative to his life.

THE COURT: Well, I do make those factual findings given we have a[sic] able-bodied male individual at 39 years of age or maybe he's 40 by now. We know what the minimum wage is. These financial assessments are less than some I've imposed just earlier this morning. Payments to be made over a period of time not all due right at one time. I do not find that those would be unduly burdensome or maintain a hardship to this particular defendant.

## A. Standard of Review

■ ¶ 12 We will not reverse a trial court's summary dismissal of post-conviction relief proceedings unless we find an abuse of discretion. *State v. Ward,* 211 Ariz. 158, 161, ¶ 7, 118 P.3d 1122, 1125 (App.2005); *State v. Watton,* 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990). "A court abuses its discretion if a decision is manifestly unreasonable or is based on untenable grounds[,]" *Schwartz v. Superior Court In and For County of Maricopa,* 186 Ariz. 617, 619, 925 P.2d 1068, 1070 (App.1996), or if the reasons given for its action are legally incorrect. *State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). We find that because Taylor's claim entitled him to relief, the trial court erred when it summarily dismissed the proceeding.

## B. Background

■ ¶ 13 The right to counsel in criminal proceedings is guaranteed by the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona Constitution. To effectuate this right, the State must provide appointed counsel to a defendant who is otherwise unable to employ counsel. *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In Arizona, the legislature placed the financial burden for appointed counsel on the county prosecuting the indigent. A.R.S. § 11–584 (Supp.2006) and § 13–4013 (Supp. 2006).[3]

¶ 14 "In 1976 the legislature amended the section describing the public defender's duties and provided that the sentencing court could require an indigent to pay the county's reasonable costs of providing defense counsel as a condition of probation." *Espinoza v. Superior Court In and For County of Pima,* 166 Ariz. 557, 560, 804 P.2d 90, 93 (1991) (citations omitted). Later, the legislature amended this statute to allow for reimbursement of legal costs from indigent defendants, "including a defendant who is placed on probation[.]" A.R.S. § 11–584(B)(3). Section 11–584(B)(3) states in relevant part:

> B. Although the services of the public defender or court appointed counsel shall

---

3. In 1999 the legislature created a "state aid to indigent defense fund." 1999 Ariz. Sess. Laws, ch. 346, § 3; codified at A.R.S. § 11–588 (Supp. 2006). The purpose of the fund is to provide financial aid to county public defenders, legal defenders and contract indigent defense counsel.

be without expense to the defendant, the court may make the following assessments:

. . . .

(3) Require that the defendant, including a defendant who is placed on probation, repay to the county a reasonable amount to reimburse the county for the cost of the defendant's legal defense.

¶ 15 Arizona Revised Statutes § 11–584(C) requires that a court, when determining any reimbursement, take into account "the financial resources of the defendant and the nature of the burden that the payment will impose." Consistent with the substantive provisions for appointed counsel for indigent defendants, and for reimbursement of these costs, Arizona Rules of Criminal Procedure 6.4 and 6.7(d) set forth the procedural means by which the courts ensure that the substantive right to counsel is available to all defendants. *Espinoza*, 166 Ariz. at 559, 804 P.2d at 92.

¶ 16 Rule 6.4 provides in part:

Rule 6.4. Determination of indigency

a. Standard. The term "indigent" as used in these rules means a person who is not financially able to employ counsel.

b. Questionnaire. A defendant desiring to proceed as an indigent shall complete under oath a questionnaire concerning that defendant's financial resources, on a form approved by the Supreme Court. The defendant shall be examined under oath regarding defendant's financial resources by the judge, magistrate, or court commissioner responsible for determining indigency. The defendant shall, prior to said questioning, be advised of the perjury penalties as set forth in A.R.S. § 13–2701 et seq.

Rule 6.7(d) states in part:

d. Contribution by the Defendant. If in determining that a person is indigent under Rule 6.4(a), the court finds that such person has financial resources which en-

able him or her to offset in part the costs of the legal services to be provided, the court shall order him or her to pay to the appointed attorney or the county, through the clerk of the court, such amount as it finds he or she is able to pay without incurring substantial hardship to himself or herself or to his or her family.

¶ 17 The Arizona Supreme Court promulgated these rules and explained that:

Rule 6 sets out procedures defining and ensuring the substantive right to counsel. Rule 6.1(a) reiterates the substantive right: all persons, regardless of their financial circumstances, are entitled to representation by counsel. In addition, Rule 6.4 prescribes the procedures for determining indigency and rules 6.5, 6.6, and 6.7 define the procedures for appointing and compensating appointed counsel.

A person is indigent, and thereby entitled to state-provided counsel, if that person "is not financially able to employ counsel." Ariz.R.Crim.Proc. 6.4(a), 17 A.R.S. A defendant *who has some financial resources available to pay* a portion of the legal expenses at or near the time they accrue is not "indigent" within the legal definition of that term, but is perhaps better described as "quasi-indigent." . . . .

This court promulgated rule 6.7(d) to provide a procedure whereby a quasi-indigent defendant would have the same opportunity to exercise the right to counsel as an indigent defendant or nonindigent defendant. Derived from the ABA Standards Relating to Providing Defense Services § 6.2 (Approved Draft 1968), the rule was designed to reduce the danger that those *who "possess some resources which can be applied* to obtaining counsel, but not enough to assure an adequate defense," are not excluded from the scope of those eligible for court-appointed counsel.

*Espinoza*, 166 Ariz. at 561, 804 P.2d at 94 (emphasis added).[4] With this background in

---

4. We note that the most recent ABA standard recommends that reimbursement be ordered only when a defendant makes fraudulent representations to obtain counsel. ABA Standards for Criminal Justice Providing Defense Services Third Edition § 5–7.2 (1992). The comment notes that

there are compelling policy reasons for not routinely requiring defendants to reimburse the state or local treasury for the cost of representation. The offer of free legal assistance is rendered hollow if defendants are required to make payments for counsel for several years

mind, we must now decide whether the trial court properly considered imputed income as a financial resource at the time it ordered the attorney assessment fees.

## C. "Financial Resources"

■ ¶ 18 The record shows that Taylor was unemployed and had "not worked for some time." It appears that he has no assets. Consequently, the only basis the trial court had for finding that he has financial resources that enable him to contribute to the costs of his defense is the possibility that he would have income when he was released from prison. Because he had no job before he was incarcerated, and has no definite job prospects for when he gets out, the court had to impute income to Taylor based on its judgment of his earning capacity. The State has not cited any authority for the proposition that pursuant to A.R.S. § 11–584(C) and Rule 6.7(d), a court may include imputed income as a "financial resource" on which to base an order to pay legal costs.[5]

¶ 19 Instead, the State relies almost entirely on *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), as authority for the trial court's orders in this case. We are not, however, persuaded for several reasons. The recoupment statute in Oregon permitted the court to order a defendant to pay costs as a condition of probation if the defendant "is or will be able to pay them." *Id.* at 45, 94 S.Ct. 2116 (emphasis added). The Court noted that the required repayment was never mandatory under the statute, but that several conditions had to be satisfied before a person could be required to pay. *Id.* In upholding the statute against Fuller's constitutional challenge, the Court noted:

> following conviction. Reimbursement requirements also may serve to discourage defendants from exercising their right to counsel, and long-term duties to make payments for representation may interfere with the rehabilitation of defendants.
>
> *Id.* at 93. Arizona Revised Statutes § 11–584, and Rules 6.4 and 6.7, show that Arizona has not adopted the more recent recommendation.

5. In contrast, the Child Support Guidelines specifically allow a trial court to impute income when a parent is unemployed or working below full earning capacity. Appendix to A.R.S. § 25–320.

[A] court may not order a convicted person to pay these expenses unless he is or will be able to pay them.... As the Oregon court put the matter in this case, no requirement to repay may be imposed if it appears at the time of sentencing that there is no likelihood that a defendant's indigency will end....

*Id.* (internal quotes omitted). Unlike Oregon's statute, A.R.S. § 11–584 and Rule 6.7(d) address only present financial resources.[6]

■ ¶ 20 Arizona Revised Statutes § 11–584(C) and Rule 6.7(d) are written in the present tense and require the court to consider whether a defendant "*has* financial resources" to offset legal costs. Rule 6.7(d) (emphasis added). When interpreting a rule or statute, we look to its language as the "best and most reliable index" of its meaning. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Unless the legislature clearly expresses an intent to give a term a special meaning, we give the words used their plain and ordinary meaning. *See State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). In determining the ordinary meaning of a word, we may refer to an established and widely used dictionary. *State v. Wise*, 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983). The *Random House Webster's College Dictionary* (1991) at page 612 defines "has" as the third person singular present indicative of "Have," which in turn, is defined in part on page 614 as "to possess; own; hold for use;...."

¶ 21 We note that although not specifically decided, every opinion discussing A.R.S.

6. Because the statute requires consideration of present financial resources, the State's citation of *Sedillo v. City of Flagstaff*, 153 Ariz. 478, 737 P.2d 1377 (App.1987), for the proposition that potential income has "present value" is unpersuasive. *Sedillo* involved calculating future income in a personal injury case and mathematically determining its "present value" for damage award purposes. As a matter of policy, the need to fairly compensate an injury victim allows the use of less than certain evidence. *See Felder v. Physiotherapy, Associates*, 215 Ariz. 154, 162, ¶ 39, 158 P.3d 877, 885 (App.2007). In contrast, we must look at the specific resources currently available to a criminal defendant.

§ 11–584(C) and Rule 6.7(d) refers to financial resources in the present tense. In *State v. Miller,* the court referred to "only those whom the court finds *to have* the requisite financial resources to offset the costs...." 111 Ariz. 558, 559, 535 P.2d 15, 16 (1975) (emphasis added). Likewise in *State v. Oehlerking,* 147 Ariz. 266, 269, 709 P.2d 900, 903 (App.1985), the court stated that "[n]o finding was made, as is required, that the defendant in fact *has* the financial resources to offset the costs" (emphasis added), and in *State v. Keswick,* 140 Ariz. 46, 48, 680 P.2d 182, 184 (App.1984), the court stated that "[t]he rule is clearly directed at those defendants who *have* partial ability to pay for counsel ...." (emphasis added); *see also Espinoza,* 166 Ariz. at 561, 804 P.2d at 94 (referring to "[a] defendant who *has* some financial resources *available* to pay a portion of the legal expenses") (emphasis added).

¶ 22 Moreover, the record does not support the State's characterization of the attorney assessment fees in this case as conditional. The court's order is unconditional:

> It is **ORDERED** the defendant shall pay the following fees, fines and assessments on the first day of the second month after the defendant is released from incarceration with the Arizona Department of Corrections at the following rates:
>
> ....
>
> [X] **ATTORNEY ASSESSMENT FEE** in the amount of $650.00 not previously paid.
> [X] **ATTORNEY ASSESSMENT FEE** in the amount of $250.00 for current proceedings.
>
> ....
>
> It is **further ORDERED** all payments are to be made through the office of the Yuma County Clerk of the Superior Court.

Even if the court's statement that a payment plan can be worked out with the court's judicial assistance unit can be considered as making the order conditional, delegating such authority is not allowed under the rule. Rule 6.7(d) requires the court itself to bal-

ance financial resources against substantial hardship at the time the fee is imposed.

■ ¶ 23 Thus, based on the purpose of A.R.S. § 11–584(C) and Rule 6.7(d) as explained by the Arizona Supreme Court in *Espinoza,* the plain and ordinary meaning of the language used in the statute and rule, and the language used in the opinions quoted above, we hold that a court may only consider the defendant's present financial resources when making a determination pursuant to A.R.S. § 11–584(C) and Rule 6.7(d).

¶ 24 A defendant's lack of employment, which largely accounts for his indigence in the first place, must be viewed as showing a lack of financial resources. A court may not create financial resources by imputing income when a defendant's income from employment is not supported by evidence in the record, or is merely speculative. Under these circumstances, we conclude that Taylor lacked the financial resources necessary to support an attorney assessment fee.[7]

**D. Findings required by A.R.S. § 11–584(C) and Rule 6.7(d)**

■ ¶ 25 We also vacate the attorney assessment fee awards because the required findings were not made by the trial court. Arizona caselaw is clear that before a court can order an indigent defendant to pay to offset the cost of legal services, the court must make factual findings that the defendant has financial resources which enable the defendant to make such payments and that the defendant is able to pay the amounts ordered without incurring substantial hardship to the defendant or to his or her family. *See Oehlerking,* 147 Ariz. at 269, 709 P.2d at 903 (holding that the trial court erred when it ordered reimbursement for legal costs without making the required findings that "defendant in fact has the financial resources to offset the cost of legal services" and "actual costs were incurred by the county in rendering the services"); see also *State v. Lopez,* 175 Ariz. 79, 853 P.2d 1126 (App.1993) (holding that it was error for the court to order reimbursement without Rule 6.7(d)

---

7. We reject the State's argument that Taylor's employment in the prison kitchen proves he can work after his release. This employment occurred after Taylor's sentencing and was not a factor in the court's consideration of his financial resources at that time.

findings and specifically holding that prior to ordering a defendant to pay for legal services a court must make findings addressing: (1) defendant's ability to pay, (2) whether such payment would cause defendant a substantial hardship and (3) the actual costs of providing legal services). Here, the trial court failed to make the required findings pursuant to Rule 6.7(d), A.R.S. § 11–584(C) and caselaw. Consequently, the trial court should have granted relief to Taylor.

## CONCLUSION

¶ 26 The trial court erred by treating imputed income as Taylor's present financial resource. Therefore, the court erred when it summarily dismissed Taylor's petition for post-conviction relief. The sentencing court also erred by imposing the attorney assessment fees without making the findings required by statute and rule. Consequently, we vacate the orders for attorney assessment fees in both cases and remand this matter for proceedings consistent with this opinion.

CONCURRING: G. MURRAY SNOW, Judge.

THOMPSON, Judge, dissenting.

¶ 27 Arizona Revised Statute § 11–584(B)(3) (2006) provides that a criminal defendant must, when ordered to do so, repay a reasonable amount in reimbursement for the cost of his legal defense, when the services of an attorney have been provided by the county by reason of the defendant's indigence. Section 11–584(C) dictates that "[i]n determining the amount and method of payment the court shall take into account the financial resources of the defendant and the nature of the burden that the payment will impose." The trial judge in this case clearly did take the appropriate considerations "into account" in ordering Taylor to pay a modest sum in installments upon his release from prison. The statute does not suggest that a felon on his way to prison need not pay anything if he does not, at the time of sentencing, have a job or cash in the bank. Quite clearly, it directs to the contrary.

¶ 28 The majority focuses on Rule 6.7(d), Arizona Rules of Criminal Procedure, which provides a procedure for making the determinations required by A.R.S. § 11–584. Rule 6.7(d) could be read to allow for the possibility, as the majority notes, that a defendant without "financial resources" may escape the statutory directive as to reimbursement of the costs of his defense. For two reasons, I would follow the statute and affirm the trial court's order.

¶ 29 First, judicial rulemaking authority is "not absolute but subject to limitations based on reasonableness and conformity to constitutional and *statutory* provisions." *DeCamp v. Central Arizona Light & Power Co.*, 47 Ariz. 517, 521, 57 P.2d 311, 313 (1936) (procedural rule gives way to contrary legislative statutory authority) (*emphasis added*). Supreme court rules "can only effect procedural matters and may not diminish or augment substantive rights." *State v. Birmingham*, 95 Ariz. 310, 316, 390 P.2d 103, 107 (1964). Rule 6.7(d) cannot affect the substantive directive of A.R.S. § 11–584(C) that a defendant repay some portion of the cost of legal services provided for him by the county.

¶ 30 And, second, I conclude that Rule 6.7(d) and the statute are complementary. The Rule mandates reimbursement by a defendant with "financial resources;" it does not preclude it in the case of a defendant who is impecunious and unemployed at the point in time that he is entering the prison system. Financial "resources" in the ordinary meaning of the term includes "... capabilities of producing wealth, or to supply necessary wants; available means or capabilities of any kind." "Resources," 3 Bouvier's Law Dictionary 2921 (3rd Rev.1984) (citing *Ming v. Woolfolk*, 3 Mont. 386 (1879)). Taylor's employability was expressly and properly considered by the trial court as a financial resource.

¶ 31 As the majority recognizes, no prior Arizona opinion answers the question propounded in this petition for review. None of the cases cited by the majority holds that an unemployed defendant without cash reserves need not pay some amount in reimbursement for the costs of his legal defense. None of the cases holds that "financial resources" may not include potential employment. As the legislature has mandated such payment

in some reasonable amount, the trial court's order is not an abuse of discretion.