514 P.2d 244

**STATE of Arizona, Appellant,**

**v.**

**Angela BURTON, a widow, Appellee.**

**No. 2 CA–CIV 1354.**

Court of Appeals of Arizona, Division 2.

Sept. 24, 1973.

Rehearing Denied Nov. 1, 1973.

Review Denied Dec. 18, 1973.

Gary K. Nelson, Atty. Gen. by Rod G. McDougall and Robert V. Kerrick, Asst. Attys. Gen., Phoenix, for appellant.

Goddard, Sophy, Ahearn & Levine by Michael M. Sophy, Phoenix, and Robert Martin, Nogales, for appellee.

## OPINION

HOWARD, Judge.

This was an action in inverse eminent domain in which plaintiff alleged that the construction of Interstate Highway I-19 in the City of Nogales, Arizona, has changed or altered drainage patterns affecting her property which resulted in increased flooding of said property. The case was tried to a jury which entered a verdict of no damages in favor of the defendant and against the plaintiff, finding that the market value of plaintiff's property immediately before construction of the highway was the sum of $46,392 (the exact amount testified to by defendant's appraiser); that the plaintiff's property was specially benefited by the construction of the highway in the sum of $7,732 and that the plaintiff suffered no damage to her property.

Plaintiff then filed a motion for a new trial or in the alternative for an "additur" on the grounds that the verdict had granted insufficient damages to the plaintiff. The trial court in its original order ruling on the plaintiff's motion, ordered that the defendant consent to an additur in the sum of $10,000 and if it did so consent, the motion for new trial would be denied. The court further stated that if the defendant failed to file the consent to the additur before a certain date that the new trial would be granted upon the grounds that the damages were insufficient and that the verdict, decision and judgment is not justified by the evidence. Defendants filed a motion for clarification of the judge's order, resulting in the following minute entry:

"in response to defendant's Motion for Clarification, the Court feels that the order is sufficiently clear that the Court intended to award plaintiff, Angela Burton, the sum of $10,000 as and for her damages. Said award is made irrespective of any finding of the jury and *in accordance with the offer to Confess Judgment, which is of record in this case, and the evidence presented at the trial.* In the alternative to granting New Trial if the defendant fails to consent to such additur within a time fixed by the Court." (Emphasis added.)

Defendant did not consent to the additur and filed this appeal. Defendant presents two main questions for review to this court. Does the order for new trial comply with Rule 59(m), Ariz.R.Civ.P., 16 A.

R.S.? Did the court abuse its discretion in granting a new trial if defendant did not consent to the additur?

The record discloses that I-19, a limited access highway, was a new alignment, no highway having been in existence at this location prior to its construction. No land whatsoever was acquired in these proceedings for the construction of I-19. The highway was constructed across a right-of-way previously purchased from the plaintiff.

The highway is located on land abutting the easterly and northerly portions of the plaintiff's property. In both the before and after situation the south boundary of plaintiff's property abuts International Street to which plaintiff has the same full access both in the before and after situation. In the before situation the subject property was located at the confluence of two small canyons which gathered and contributed a run-off from Crawford Street down across the subject property to a fifteen inch pipe which discharged under International Street into a drainage canal in the Republic of Mexico. Initial construction of I-19 caused existing drainage patterns to be intersected and the discharge of surface waters to be directed upon the subject property through a thirty inch corrugated metal pipe constructed beneath the highway at the confluence of the drainage basins previously described.

Plaintiff's main complaint at the time the lawsuit was filed was that water running through the thirty-inch pipe discharged water, mud and silt on her property. As a result of the filing of the lawsuit it was decided sometime prior to the trial of the case to shut off this pipe. Approximately one month before the trial the pipe was closed and the water is now intercepted within the right-of-way and carried to a catch basin near International Street and away from the subject property.

In addition to the property owner, five persons testified on behalf of the plaintiff at the trial. They were Sanford Evans, a civil engineer; Enriqueta Borland, a lifetime friend of the plaintiff; Maria Damiano, who lived on the Burton property; and Pierre Baffert, an appraisal witness.

Testifying for the defendant were Manuel Montano, an engineer for the State Highway Department; Ralph Woodhouse, captain of the Nogales Fire Department; Leonard Halpenny, a geological engineer and consulting hydrologist; and Craig Pottinger, an appraisal witness.

At the outset of the trial plaintiff claimed that no consideration should be given to the fact that the defendant had closed the thirty-inch pipe and eliminated the water flowing therefrom. Plaintiff maintained that in ascertaining the damages the property should be valued as if the pipe had never been closed off. This contention was rejected by the trial court. Sanford Evans testified that based upon a twenty-five year storm at peak discharge the subject property in the before situation would have approximately twenty-five cubic feet per second of water discharged onto the property. Translated into gallons this amounted to 187 gallons per second. Mr. Evans admitted that his figures would indicate that the property would flood in the before situation. He further testified that with the thirty-inch pipe in place, and unblocked, approximately the same amount of water would be cast upon the subject property but would do so in a more concentrated manner bringing fill and mud onto the property. On cross-examination Mr. Evans admitted that with the pipe shut off, the majority of the flooding problem on plaintiff's property was alleviated. In spite of the fact that the thirty-inch pipe had been closed off, Mr. Evans dauntlessly adhered to the position he had taken prior to the closing of the pipe, to wit, it would be $11,730 to install a driveway and drainage way in order to solve flooding problems on the property.

The plaintiff, Angela Burton, testified that she had lived on the property for for-

ty-three years. Improvements on the property consisted of two residences, two apartments and a small warehouse. She stated that she never had any flooding on her property before the highway was built. After it was built she claimed that the water came into the houses and ruined furniture. She also stated that she contacted the highway department but they refused to do anything.

Mrs. Borland testified that although the property had flooded before there was never a problem with mud.

Mrs. Damiano stated that before the highway was built the land had dried normally and that after the highway was built the water flowed over the freeway like a waterfall and flooded her house.

Mr. Woodhouse, called by the defendant, testified that he has been the captain of the Nogales Fire Department for twenty-five years and lived in Nogales practically all of his life. He stated that part of his job was to send assistance to people in the area who had flooding problems. He stated that he was familiar with the Burton property; that there has been a water problem up there as long as he could remember, which went back about twenty years; that on August 11, 1969, prior to the time the highway was constructed his office received a phone call from Mrs. Burton for aid because of flooding; that on July 6, 1967, he was called out to the property because Mrs. Burton called and stated her property was flooded. He went to the property and observed there was no flooding of any of the houses but that the land behind Mrs. Burton's home was flooded; that the low areas on the property were considerably flooded with three or four inches of water and it was very muddy.

Craig Pottinger, testified that he had lived in Nogales all of his life and was familiar with the Burton property. He stated that as a child he lived on Crawford Street where he could look right down on the property and lived as a boy in that area. In describing the drainage situation on the Burton property before the construction of the highway he stated: "It was always the lowest spot where any of the water that came off Crawford ended up invariably on International Street."

Pierre Baffert, as did the appraiser for defendant, testified that the highest and best use of the property in both the before and after situation was for commercial purposes. Neither appraiser attributed any value to the improvements. Mr. Baffert valued the property in the before situation at $2 per square foot or the total sum of $61,850. Mr. Baffert testified that the value of the property in the after situation without any attempt to cure the damage, would be $19,195, but that with the expenditure of $11,730, the amount testified to by Mr. Evans, the property would be worth $30,925 in the after situation. Mr. Baffert computed damages in the sum of $42,655. It is worthy to note at this time that Mr. Baffert, as Mr. Evans, steadfastly adhered to the damage estimates that he had computed prior to finding out that the State had closed the thirty-inch pipe. At his deposition taken prior to the trial and prior to the knowledge that the pipe had been shut off, Mr. Baffert testified that his damages would be reduced if the pipe were shut off. Mr. Baffert further pointed out that a twenty-four inch drain on the highway itself was not sufficient to keep the water from flowing off the property and that he had observed evidence that water had flowed over the curb and onto the subject property. He also stated that the water that formerly went through the thirty-inch pipe would now be discharged into the highway and into the intersection of International and West streets and thereby "diminish" plaintiff's ability to get to her property.

Manuel Montano testified that during the construction of the highway he received a call from the plaintiff after a rain in the area. He went out to the property

and observed the water and mud on the property and when Mrs. Burton asked him to do something about it, he contacted the district engineer from Tucson about her problem. Mr. Montano, pursuant to authority from the State, offered to have New Pueblo Construction Company, the contractor for the job, go on the land, blade the property and remove the mud and place crushed rock on top of the land. Mr. Montano testified that this would greatly alleviate her problem as far as the mud was concerned. The plaintiff, however, would not allow New Pueblo Construction Company to come onto the land since the contractor would not do so without a release and she would not sign it. Mr. Montano stated that after the rains in August of 1971, he was present when the highway maintenance crews were cleaning out the twenty-four inch pipe which drained the water off the right-of-way itself and at that time found that someone had deliberately blocked the pipe with a large piece of tin which had been wedged into place with a stick. Pictures of the stick in place and the tin itself were introduced into evidence at the trial. He further testified that the banks of the right-of-way had achieved 95% compaction and that any problem of dirt sloughing off of the shoulders of the right-of-way would be minimal.

Mr. Halpenny testified that in the before situation in a twenty-five year storm a peak discharge of twenty-five cubic feet per second of flood water would be cast upon the Burton property and that the property was subject to a substantial drainage problem. He further testified that because of this drainage problem, the mud problem on the property had been developing for a long time. He stated in the after situation and before the thirty-inch corrugated pipe had been cut off the amount of water which would reach the subject property in a peak discharge during a twenty-five year storm would be 15.5 cubic feet per second. After the pipe had been cut off, he testified that the amount of water which would reach her property during the twenty-five year storm would be one cubic foot per second as opposed to twenty-five cubic feet per second in the before situation. It was also his opinion that in the after situation the property would not receive a substantial amount of mud, debris or silt off the shoulders of the highway. Translating the flow in gallonage Mr. Halpenny stated that in the before situation the property during the twenty-five year storm at peak discharge would have received 187 gallons per second whereas after the thirty-inch pipe had been cut off it would receive seven and a half gallons per second of flow. In the after situation without the pipe having been cut off it would have received 119 gallons per second in the twenty-five year storm. It was his opinion that the subject property did not have a drainage problem at the time of the trial as a result of the highway construction since 95% of the run-off originating upstream was now diverted elsewhere.

We first turn our attention to the question of whether or not the order granting the new trial and its clarification satisfied the requisite specificity mandated by Rule 59(m). Specificity is important in determining on appeal who has the burden of convincing the appellate court that the trial court did not err in ordering the new trial. If the order granting the new trial is not specific we will presume that the verdict of the jury was correct, shifting the burden to the appellee to convince us that the trial court did not err in ordering a new trial. Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966); Phoenix Title and Trust Company v. Arizona Public Service, 8 Ariz.App. 221, 445 P.2d 169 (1968).

Before addressing ourselves to the adequacy of the order for a new trial we find it necessary to discuss the propriety of the court ordering an additur in this case. Rule 59(i), Ariz.R.Civ.P., 16 A.R.S., states as follows:

"When a motion for a new trial is made upon the ground that the *damages awarded* are either excessive or insuffi-

cient, the court may grant a new trial conditionally upon the filing within a fixed period of time of a statement by the party adversely affected by the reduction or increase of damages accepting that amount of damages which the court shall designate. . . ." (Emphasis added)

Under the foregoing rule the court can only grant an additur when the jury awards damages and these damages are insufficient. The court cannot grant an additur when the jury finds that the plaintiff was not damaged.

■ Turning our attention to the first order entered by the court we find that the court specified as reasons (1) the damages were insufficient and (2) the verdict, decision and judgment is not justified by the evidence. The court's later clarification of the order then states that the damages were insufficient because of the $10,000 offer to confess judgment which was filed in the case and the evidence presented at the trial. It is clear that the order granting the new trial on the ground that the verdict, decision and judgment is not justified by the evidence, being a general rather than a detailed statement is not specific. Pheonix Title and Trust Company v. Arizona Public Service, supra. However, translating the court's ground that the damages are insufficient as meaning that the evidence showed that the plaintiff should have been awarded damages, we find that the order was specific enough to comply with Yoo Thun Lim v. Crespin, supra. Therefore, the test to be applied on our review is whether the trial court clearly abused its discretion in granting a new trial. Estabrook v. J. C. Penney Company, 105 Ariz. 302, 464 P.2d 325 (1970). Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470 (1955).

We find many similarities between this case and the case of Creamer v. Troiano, 108 Ariz. 573, 503 P.2d 794 (1972). In that case the jury rendered a verdict of $1,500 and the court granted an additur in the amount of $6,000 which coincidentally happened to be the amount of defendant's offer of judgment. In *Creamer* there was no evidence that the trial court referred to the offer in order to determine the additur. In the case at bench, we have the court, in a minute entry, giving as a reason for the "additur" of $10,000, the fact that the defendant had offered to confess judgment in that sum, which offer was subsequently withdrawn. Rule 68 of the Arizona Rules of Civil Procedure provides:

"At any time more than ten days before the trial begins, a party defending against the claim may serve upon the adverse party an offer to allow a judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten days after service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and a judgment complying with the requirements of Rule 58(a) shall be entered. *An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine cost. . . .*" (Emphasis added)

■ It was highly improper and a clear abuse of discretion for the trial court to refer to or consider the offer of judgment. The rule specifically states that the only use that can be made of this offer is in the assessment of costs. Not only is such a reference to the offer of judgment contrary to the foregoing rule, but it is also contrary to common sense. If the trial court is allowed to consider an offer of judgment in deciding whether or not a new trial should be granted or whether or not an additur should be made and in what amount, then there is nothing to discourage the plaintiff from "rolling the dice" and going to trial since she knows that the least she can get is the offer of judgment.

Such a concept would only contribute to the further congestion of our already overburdened court system.

■ Turning to the evidence in the case it is easy to see why the jury arrived at a verdict of no damages. Although the plaintiff claimed that her property had never been flooded before the construction of the highway, the chief of the Nogales Fire Department, an impartial witness, testified that he had received calls prior to the construction of the highway from Mrs. Burton to come to her aid because of flooding on the property. Plaintiff's own expert witness, Mr. Evans, testified that the property flooded in the before situation according to his figures. Craig Pottinger, who had lived all of his life in Nogales in a house overlooking the Burton property, testified how the property had always flooded. This could well lead any reasonable jury to disbelieve the testimony of the plaintiff and her friends.

The jury could also have considered the testimony of plaintiff's expert witnesses incredible when they stoutly adhered to their prior estimates of damage even when confronted with the fact that the closing of the pipe removed 95% of the water which previously flowed over the property.

■ In defense of the trial court the plaintiff maintains that, under the "before and after rule" adhered to in Arizona on the question of damages to real property in condemnation actions, the evidence as to the closing of the pipe was inadmissible and the valuation had to be made as if the pipe had not been closed. We find such a theory to be entirely unreasonable. Plaintiff is entitled to no more than her *actual* damages. We are not able to endorse a doctrine that if a defendant injures the property of another in the nature of a trespass the defendant cannot correct the trespass prior to the time of trial, but instead must be charged with the same under some hypothetical theory of damages. The evi-

dence as to the closing of the pipe was not only admissible but it would have been error to exclude it. Michigan State Highway Commission v. Davis, 38 Mich.App. 674, 197 N.W.2d 71 (1972). *See also* Big Pool Holstein Farms, Inc. v. State Roads Commission, 245 Md. 108, 225 A.2d 283 (1967). Plaintiff had no right to have the case tried on a false assumption.

■ Plaintiff claims that the trial court was justified in granting a new trial because even the appraiser for defendant testified that the property had been "damaged" and because the evidence is uncontradicted that the water flowed into the houses on the property. While it is true that the State appraiser did say the property had been damaged, he testified that it did not affect the market value of the property considering its highest and best use. Indeed, neither the appraiser for the plaintiff nor the defendant's appraiser attributed any value to the improvements whatsoever. Plaintiff offered no evidence as to any amounts of damage caused by any flooding incident. Rather, she chose to try the case on an all or nothing basis and cannot, after having failed to prevail before the jury, ask the court to permit her to come back and try the case on a different theory of damages.

The evidence clearly preponderated in favor of the verdict of the jury and the court abused its discretion in granting a new trial. The order granting the new trial is set aside and the trial court is directed to enter judgment on the verdict in favor of the appellant and against appellee.

KRUCKER and HAIRE, JJ., concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge LEVI RAY HAIRE was called to sit in his stead and participate in the determination of this decision.