254 P.3d 397

In the Matter of the ESTATE OF Noyes W. HANSCOME, Deceased.

Colleen A. Hanscome, Personal Representative of the Estate of Noyes W. Hanscome, on behalf of the Estate of Noyes W. Hanscome, and Colleen A. Hanscome, individually and on behalf of Noyes W. Hanscome's statutory beneficiaries pursuant to A.R.S. section 12–612(A), Plaintiff–Appellee–Appellant,

v.

Evergreen at Foothills, L.L.C., a Washington limited liability company dba Evergreen Foothills Health and Rehabilitation Center; Evergreen Healthcare Management, L.L.C., a Washington limited liability company, Kim Benjamin Bangerter, executive director, Defendants–Appellants–Appellees.

No. 1 CA–CV 10–0007.

Court of Appeals of Arizona, Division 1, Department E.

April 21, 2011.

Law Office of Scott E. Boehm, P.C. by Scott E. Boehm and Wilkes & McHugh, P.A. by Melaine L. Bossie, Elizabeth A. Gilbert, Phoenix, Attorneys for Colleen A. Hanscome.

Smith Farhart & Hornstein, L.L.P. by Elizabeth J. Farhart, Donald H. Smith, Peoria, Attorneys for Evergreen at Foothills.

## OPINION

WEISBERG, Judge.

¶ 1 Evergreen at Foothills, L.L.C., dba Evergreen Foothills Health and Rehabilitation Center; Evergreen Healthcare Management, L.L.C.; and Kim B. Bangerter, director of Evergreen Foothills Health and

Rehabilitation Center (collectively "Defendants") appeal from the superior court's order that they accept an additur to a jury's award of zero damages to Colleen A. Hanscome, widow of Noyes W. Hanscome, as an alternative to a new trial on damages. Colleen appeals on behalf of her minor son, Chandler, from the court's order remitting the jury's verdict on Chandler's damages for the wrongful death of his father, again as an alternative to a new trial on damages. Because both sides rejected the awards of additur and remittitur, the court ordered a new trial to determine the amount of wrongful death damages. For reasons that follow, we affirm the damage award to Noyes' estate but reverse the additur to Colleen, vacate the remittitur of Chandler's damage award, and remand for further proceedings.

## BACKGROUND

¶ 2 Noyes Hanscome was undergoing cancer treatment when he was admitted to the hospital in December 2004 for an unrelated head injury. He was later transferred to Evergreen Foothills Health and Rehabilitation Center on January 28, 2005. On February 28, 2005, Noyes was re-transferred to the hospital and died on March 8, 2005. Colleen alleged that due to the substandard care Noyes had received at the Evergreen Center, he suffered a premature [1] and painful death. Colleen brought an action for elder abuse on behalf of Noyes' estate under the Adult Protective Services Act ("APSA"), Arizona Revised Statutes ("A.R.S.") sections 46–451 to –459 (Supp. 2009). She also alleged claims for negligence and wrongful death on behalf of herself and Chandler.

¶ 3 The case went to trial, and in closing argument, Colleen's counsel suggested an award of $5 to 10 million to compensate Chandler for Noyes' wrongful death. Although the jury was instructed on punitive damages, it declined to award such damages. The jury, however, awarded Chandler $1.8 million in compensatory damages; awarded Colleen zero damages; and awarded Noyes' estate $200,000. The court entered judgment for $2 million in addition to costs and attorney's fees.

¶ 4 Defendants moved for a new trial. They asserted that by giving a punitive damage instruction, the court had "opened the door to the concept of punishment" and inflamed the jury to award the "outrageously excessive" amount of $1.8 million to Chandler. They also asserted that "the jury found a way to punish Defendants and take care of Chandler by inflating his compensatory damages without having to comply with the clear and convincing standard that punitive damages require." Defendants additionally challenged instructions that barred consideration of insurance proceeds to reduce the damages and that allowed the jury to draw a negative inference from the loss of certain records. Finally, they challenged the propriety of Colleen's closing argument and argued that her counsel improperly had waited until rebuttal to address damages. In their reply, Defendants for the first time suggested that the court could apply remittitur to the verdict.

¶ 5 At oral argument, when the court asked what "a fair verdict" for Chandler might be, Defendants suggested "around the $500,000 mark." The court stated that "the ultimate test" was "what is fair and reasonable compensation given the damage sustained," and later said, "you didn't mention additur, why wouldn't there be a request to add something" to Colleen's award in light of the verdicts for Chandler and the estate. Colleen responded that the test is whether the verdict shocked the trial court's conscience and that although an award in her favor would have been desirable, "it's better to let our system work and let the jury verdict stand." The court denied a new trial but asked for supplemental briefing on the issue of remittitur.

¶ 6 In her supplemental brief, Colleen argued that an additur was more justified than a remittitur. She cited *Sedillo v. City of Flagstaff*, 153 Ariz. 478, 479, 737 P.2d 1377, 1378 (App.1987), a wrongful death action in which the plaintiffs unsuccessfully moved for

---

1. Some medical evidence suggested that Noyes' life expectancy was approximately one year at the time he entered the Evergreen Center.

additur, and this court found that the trial court had abused its discretion because the "unimpeached evidence" showed close family relationships had existed between the deceased and his family and that "all suffered substantial emotional, and possibly financial, injuries." *Id.* at 482, 737 P.2d at 1381. Colleen stated that she did not expect the court to "take any action" but that "the law would favor an additur." In their supplemental brief, Defendants asserted that the jury had failed to consider Noyes' short life expectancy and inability to interact with Chandler. They argued that Chandler should receive $200,000 in compensatory damages.

¶ 7 At a second oral argument, the court observed that "the jury was outraged" by Defendants' conduct and that punitive damages would have been proper. Colleen's counsel argued that remittitur was proper in cases in which the jury misunderstood the instructions or had not been properly instructed but that "just what you think is reasonable" was not the standard applied in those cases. He added that he was not asking the court to impose punitive damages when the jury had declined to do so, at which time the court said, "Yeah, but this isn't the bottom line does the evidence support the verdict." The court also said that the jury "punished the Defendant[s]. They didn't follow the instructions with respect to wrongful death." The court noted that "the person who lost the contact, the love and affection, the relationship" was Colleen and expressed doubt that Noyes could have participated in Chandler's life "other than to see him and maybe kiss him."

¶ 8 In its ruling, the court found the award to Noyes' estate "fair and reasonable" and that Defendants' outrageous conduct would have supported a punitive damage award of $1.8 million. It rejected the argument that the evidence had inflamed the jury, and because there was no punitive damages award, the court concluded that the verdicts were based on the jury's view of the evidence. But "[i]n good conscience," the court could not find that "adequate evidence" supported the actual damage award of $1.8 million to Chandler and reduced it to the sum that Defendants initially had suggested was "fair," i.e., $500,000. Furthermore, the court concluded that *Sedillo* required it "in good conscience" to award an additur to Colleen of $200,000 because "[t]he only reasonable explanation for a zero award is the jury's belief that she received a substantial sum from [the] life insurance carrier."[2] The court gave both sides time to consider whether to accept the remittitur and additur in lieu of a new trial.[3]

¶ 9 Colleen notified the court that she would not accept the remittitur, and Defendants timely rejected the additur. The court then issued a "final order" noting the rejection of its proposal and ordering a new trial to determine the amount of damages suffered by Colleen and Chandler.

¶ 10 Colleen appealed from the judgment on the jury verdict and the court's final order. Defendants filed a "Supplemental Notice of Appeal" challenging the additur. We have jurisdiction pursuant to A.R.S. § 12–2101(B), (F)(1)(2003).

## DISCUSSION

¶ 11 Colleen contends that in offering a remittitur of Chandler's verdict, the court applied an incorrect legal standard, i.e., the court's own sense of fairness, and overlooked evidence supporting the $1.8 million verdict. In their appeal, Defendants argue that the

---

2. The *Sedillo* court noted that despite "ample testimony" of the plaintiffs' losses, the jury improperly might have considered comparative negligence principles in arriving at the "extremely low damage awards" given to some of the survivors. 153 Ariz. at 482, 737 P.2d at 1381. For those survivors who received no damages at all, however, the court held that "additur was not an available remedy" and that they should receive a new trial. *Id.* at 482–83, 737 P.2d at 1381–82.

3. Arizona Rule of Civil Procedure 59(i)(1) provides that if a party seeks a new trial because "the damages awarded are either excessive or insufficient, the court may grant the new trial conditionally upon the filing within a fixed period ... of a statement ... accepting that amount of damages which the court shall designate." If the affected party accepts the designated damages, a new trial is denied; if the party declines, a new trial is granted for purposes of damages only.

court abused its discretion by offering the additur for Colleen. We first consider the grant of a new trial on the issue of Chandler's damages.

### Remittitur of Chandler's Award

¶ 12 It is "well settled in Arizona that the amount of an award for damages is a question peculiarly within the province of the jury, and such award will not be overturned or tampered with unless the verdict was the result of passion and prejudice." [4] *Larriva v. Widmer*, 101 Ariz. 1, 7, 415 P.2d 424, 430 (1966). Thus, when faced with a motion for new trial asserting that the damages were excessive or the verdict resulted from passion or prejudice or was not justified by the evidence, the trial court asks whether the "verdict is so 'manifestly unfair, unreasonable and outrageous as to shock the conscience.'" *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55, ¶ 23, 961 P.2d 449, 453 (1998). Furthermore, neither an appellate court nor the trial court may "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences ... or because ... other results [were] more reasonable." *Id.* at 56, ¶ 27, 961 P.2d at 454; *see also Creamer v. Troiano*, 108 Ariz. 573, 576, 503 P.2d 794, 797 (1972) (if "case has been submitted on correct rulings and instructions, and the verdict is within the range of credible evidence," verdict was not the result of passion or prejudice and should be affirmed); *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 36, ¶ 15, 31 P.3d 806, 810 (App.2001) (court should uphold verdict "[i]f any substantial evidence could lead reasonable persons to find the ultimate facts to support" it). The *Hutcherson* court observed that to assess whether sufficient evidence supports a verdict, we "look to the broad scope" of the trial and not for evidence to support a different conclusion or inference than that reached by the jury. 192 Ariz. at 56, ¶ 27, 961 P.2d at 454.

¶ 13 Although "verdict size alone does not signal passion or prejudice," *id.* at 57, ¶ 36, 961 P.2d at 455, if the trial court finds that a verdict is so tainted, remittitur is not a proper remedy; rather, the court should order a new trial. *Stallcup v. Rathbun*, 76 Ariz. 63, 65, 258 P.2d 821, 823 (1953). But if a verdict instead reflects "an exaggerated measurement of damages" in an area in which reasonable persons may differ, the trial court should not lightly conclude that it is tainted. *Id.* (citation omitted). In that event, the trial court may exercise its discretion to order remittitur if it finds that the verdict is large, yet not "shocking[ly] or flagrantly outrageous." *Id.* at 67, 258 P.2d at 824.

¶ 14 When a trial court orders remittitur, we accord that ruling "[t]he greatest possible discretion because, like the jury, [the trial court] has had the opportunity to hear the evidence and observe the demeanor of witnesses." *Mammo v. State*, 138 Ariz. 528, 533–34, 675 P.2d 1347, 1352–53 (App.1983). Nonetheless, remittitur is proper only "for the most cogent reasons," *Young Candy & Tobacco Co. v. Montoya*, 91 Ariz. 363, 370, 372 P.2d 703, 707 (1962),[5] such as lack of evidence to support the damages awarded or a clear indication that the jury misapplied the principles governing damages. Thus, although "remittitur is a device for reducing an excessive verdict to the realm of reason," if the verdict is "within the limits of the evidence," the trial court should not reduce the verdict. *Muccilli v. Huff's Boys' Store, Inc.*, 12 Ariz.App. 584, 590–91, 473 P.2d 786, 792–93 (1970) (reinstating $21,000 verdict for con-

---

4. A verdict may indicate passion or prejudice if it is "so excessive as to [seem], at first blush, ... beyond all measure, unreasonable, and outrageous," and to suggest that the jury acted upon "passion, partiality, prejudice, or corruption." *Stallcup v. Rathbun*, 76 Ariz. 63, 66, 258 P.2d 821, 824 (1953) (citation omitted).

5. *In Young Candy*, the defendants' vehicle hit a pedestrian who was in a crosswalk, and they appealed from the trial court's refusal to reduce the "excessive" verdict of $25,000. *Id.* at 365–66, 372 P.2d at 704. Our supreme court stated that if the verdict was "reasonably supported by the evidence, when the trial is free from error," the verdict should stand unless "the jury has mistakenly applied the wrong principles in estimating the damages or was actuated by improper motives or bias indicating passion or prejudice." *Id.* at 370, 372 P.2d at 708. Because the trial court had upheld the jury's verdict and the supreme court found no reasonable basis to disagree, it affirmed the verdict. *Id.*

tract breach; mere uncertainty over calculation of injury did not support remittitur to $15,000 when one view of evidence showed loss exceeding verdict).

■ ¶ 15 We acknowledge that determining whether Chandler's award was within the limits of the evidence is difficult because the losses he suffered were personal, non-economic, and not easily quantified. As the parties agreed, Noyes' life expectancy was short and Chandler was very young when Noyes died. Nevertheless, the wrongful death statute, A.R.S. § 12–613 (2009), allows surviving spouses and even adult children to recover for loss of love, comfort, guidance, and companionship. *White v. Greater Ariz. Bicycling Ass'n,* 216 Ariz. 133, 136, ¶ 7, 163 P.3d 1083, 1086 (App.2007). It is unclear what led the jury to allocate so much of the damages to Chandler, but he was nearly three when Noyes died, and an additional year with his father would have represented a large percentage of Chandler's life. As Chandler's counsel argued to the jury, another year would have given Chandler more time to form memories and to celebrate holidays and special occasions with Noyes. It is not inconceivable that the jury considered such factors.

¶ 16 In considering the verdict, the trial court stated that the jury was outraged by the evidence, that punitive damages of $1.8 million would have been warranted, that the jury had improperly considered Colleen's receipt of insurance proceeds in failing to award her any damages, and thus that the court would have affirmed an overall $2 million judgment. The court nonetheless concluded that Chandler's award was excessive and adjusted the verdicts so that Chandler, Noyes' estate, and Colleen jointly received $900,000. The court's frequent references to using its "good conscience" and sense of "fairness" suggest that it may have erred in concluding that it had discretion to review the jury's verdict in light of the court's sense of what was fair and reasonable. On the other hand, the final minute entry suggests that the court may have concluded that Chandler's award was not within the range of the credible evidence and that the jury, although properly instructed, failed to follow its instructions. Given the uncertainty in this record about whether the court applied the proper standard in reviewing the verdict and in determining that remittitur was justified, we vacate its ruling and remand for reconsideration, under the appropriate standard, of whether a new trial should be granted and, if so, whether the order for a new trial should be conditioned upon Chandler's acceptance or rejection of a remittitur in an amount to be determined by the trial court.

**Propriety of Additur**

■ ¶ 17 Defendants argue, and Colleen concedes, that the trial court erred as a matter of law in adding to her verdict when the jury had awarded her zero damages. In interpreting Arizona Rule of Civil Procedure 59(i), we have held that "the court can only grant an additur when the jury awards damages and these damages are insufficient. The court cannot grant an additur when the jury finds that the plaintiff was not damaged." *State v. Burton,* 20 Ariz.App. 491, 496, 514 P.2d 244, 249 (1973). Similarly, in *Sedillo,* some of the decedent's survivors received very small damage awards and some received none. We held that "for those appellants who did not receive any damages, additur was not an available remedy because Arizona law clearly dictates that a court can grant additur only where the jury had awarded some damages." 153 Ariz. at 482, 737 P.2d at 1381. However, rather than receiving additurs, those plaintiffs who received nothing were entitled to a new trial. *Id.* (those who received no damages were entitled to some damages as statutory beneficiaries in light of the defendant's established liability). Of course, in both *Sedillo* and *Burton,* the plaintiffs who received new trials had timely filed motions for additur or in the alternative motions for new trial. *Sedillo,* 153 Ariz. at 479, 737 P.2d at 1378; *Burton,* 20 Ariz.App. at 492, 514 P.2d at 245.

■ ¶ 18 Colleen now argues that she should receive a new trial because, as in *Sedillo,* given Defendants' liability, ample testimony demonstrated her emotional and financial loss and yet the jury awarded no damages. However, Colleen did not request a new trial within the time limits prescribed

by Rule 59(d) ("not later than 15 days after entry of judgment"). *See Lopez–Hudson v. Schneider*, 188 Ariz. 407, 409, 937 P.2d 329, 331 (App.1996) (Rule 59 time limits are strictly construed and cannot be enlarged). She nonetheless contends that the trial court properly granted her a new trial pursuant to Rule 59(g) because Defendants had timely moved for new trial on other grounds and, as required by Rule 59(g), the court gave all parties notice and an opportunity to be heard. Colleen also notes that Defendants filed their motion one day before the fifteen-day deadline of Rule 59(d), leaving her no time to file her own motion for additur or new trial.

¶ 19 We agree that Rule 59(g) posits two alternatives: the first sentence allows a court to order a new trial "on its own initiative" not later than 15 days after entry of judgment "for any reason for which it might have granted a new trial" Thus, if no party has requested a new trial, the court has a short window within which to act on its own initiative. Colleen argues, however, that as long as any party has moved for a new trial, the second sentence of Rule 59(g) allows the court to grant relief to a non-moving party "for a reason not stated in the motion," even if that party did not timely seek a new trial. Colleen cites no case interpreting the second sentence of Rule 59(g) as she suggests.

■ ¶ 20 The state bar committee note to our Rule 59(g) explains that it was "taken from Federal Rule 59(d)" and that the 1966 amendment, which added the second sentence, was to clarify that the trial court has the power "when an effective new trial motion has been made ... to decide it on grounds though[t] meritorious by the court although not advanced in the motion." Although neither the Rule nor comment explicitly states whether a court may grant a new trial to a party who never timely moved for a new trial, we conclude that the court may resolve a motion for new trial either for a reason asserted in the motion or for a reason not specified by the moving party's motion but may *grant relief only to the moving party*. The court may not, however, grant a

new trial to a non-moving party who did not timely request one.

¶ 21 A case interpreting the federal rule supports our view. In *Tarlton v. Exxon*, 688 F.2d 973, 977 (5th Cir.1982), a jury found Exxon 5% at fault and Diamond M 95% at fault for the plaintiff's injuries. Exxon timely moved for a new trial, and although Diamond M initially opposed the motion, at a subsequent hearing it orally moved to join the motion. The district court granted judgment notwithstanding the verdict to Exxon and dismissed the plaintiff's claim against it. The court sua sponte ordered a new trial on Diamond M's liability unless the plaintiff accepted a remittitur. *Id.*

¶ 22 The Fifth Circuit, however, vacated the new trial order and ruled that the time limit for a new trial motion was "mandatory and jurisdictional." *Id.* Thus, Diamond M's oral request was not timely and without effect, and it could uphold the new trial order only if the new trial had been ordered sua sponte within ten days[6] of entry of judgment, which it was not. *Id.* at 978. The appellate court specifically rejected the notion that Exxon's timely motion could extend the ten-day window for sua sponte action in favor of a non-moving party because under such interpretation, that limit would "be extended indefinitely for all defendants simply because one defendant timely sought post-trial relief ... [and would] result in the anomalous situation of the court, months after the verdict, denying a timely filed motion for one defendant, and sua sponte, granting relief to a defendant who sought no relief." *Id.* at 978–79. Accordingly, because Colleen did not timely seek any relief under Rule 59(g), she was not entitled to a new trial.

## CONCLUSION

¶ 23 For the foregoing reasons, we reverse the order awarding Colleen a new trial in lieu of Defendants' acceptance of an additur. Furthermore, we vacate the order granting a new trial to Chandler, limited to his damages, in lieu of his acceptance of a remittitur in the amount of $500,000. We remand for the trial court to reconsider Defendants' new

---

6. Federal Rule 59(d) now allows twenty-eight days for sua sponte action.

trial motion regarding Chandler's damages and to apply the correct legal standard of whether substantial evidence supported the $1.8 million verdict. If the court concludes that substantial evidence supports the verdict in favor of Chandler, it may deny the motion. If the court concludes that substantial evidence does not support the verdict, it must order a new trial on the issue of damages only and, pursuant to Rule 59(i), may condition such new trial upon Chandler's acceptance of a remittitur in an amount determined by it to be supported by substantial evidence.

¶ 24 Defendants have requested an award of attorney's fees incurred in the appeal. They cite no authority in support, and thus we decline their request. *Bed Mart, Inc. v. Kelley,* 202 Ariz. 370, 375, ¶ 24, 45 P.3d 1219, 1224 (App.2002). No party has requested an award of costs. Defendants prevailed on their request to overturn the additur for Colleen, and on behalf of Chandler, Colleen prevailed in overturning the remittitur of Chandler's award. Therefore, we do not order either party to pay the other party's costs incurred on appeal.