**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RANDOLPH G. BACHRACH, | No. 13-16363 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-00315-ALH |
| v. | |
| COVENANT TRANSPORATION INCORPORATED, a Tennessee corporation; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Ancer L. Haggerty, Senior District Judge, Presiding

Argued and Submitted October 21, 2015
San Francisco, California

Before: THOMAS, Chief Judge and REINHARDT and McKEOWN, Circuit Judges.

This action arises out of a motor vehicle accident in which the plaintiff's

adult son, Matthew Bachrach, died after colliding with an overturned tractor trailer

owned by Covenant Transportation. At the time of his death, Matthew was thirty-

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

one years old, with a pregnant wife, and two young children; neither his wife nor his children are parties to this lawsuit. Randolph Bachrach, Matthew's father, brought this action for wrongful death against Covenant Transportation and the driver of the tractor trailer, Alfred Simister, in Arizona state court.[1] The case was removed to the United States District Court for the District of Arizona based on diversity of citizenship.

The district court granted partial summary judgment to the defendants with respect to the plaintiff's claim for punitive damages, and the defendants stipulated to liability for Matthew's wrongful death. The court then held a two-day trial to determine the amount of compensatory damages that should be awarded to the plaintiff for loss of consortium and pain and suffering. The jury awarded $3.718 million. The district judge, after examining verdicts in similar Arizona cases, found that this verdict was irrationally high in light of the evidence presented at the trail. *Bachrach v. Covenant Transp., Inc.*, No. 2:10-CV-00315-PHK-GMK, 2012

---

[1] Carrie Bachrach, Randolph Bachrach's former spouse and Matthew's mother, was originally a party to the suit. She has since settled her claim with Covenant Transportation, and accordingly, any facts relevant to her claim or compensation are not at issue in this appeal and will not be discussed here. Matthew and Carrie Bachrach also sued another Covenant Transportation employee, but that defendant was subsequently dropped from the case. Because Matthew's wife and children are not parties to this case, we give no consideration to their rights on this appeal.

WL 2317768, at *1, *4 (D. Ariz. June 18, 2012). Accordingly, he granted a remittitur to $400,000, or in the alternative, a new trial.

Bachrach rejected the remittitur and a second trial was held. The second jury awarded him $575,000. Bachrach appeals, arguing that: (1) the district court abused its discretion by granting a remittitur, and (2) the district court should not have granted summary judgment on the issue of punitive damages.

1. Federal courts sitting in diversity must apply the law of the state to measure whether a remittitur is appropriate. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 429–31 (1996). This court reviews a remittitur decision for an abuse of discretion, *id.* at 419, which requires us to determine whether the court "based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

Arizona courts employ a two-step inquiry for remittitur. First, if a court finds that the jury award was driven by "passion or prejudice," then the court must order a new trial without option for remittitur. *Young Candy & Tobacco Co. v. Montoya*, 372 P.2d 703, 706–07 (Ariz. 1962). Second, if the court determines that the verdict has not been influenced by passion or prejudice, it may grant remittitur of compensatory damages if it determines that: viewed in the light most favorable

3

to sustaining the verdict, there is no "substantial evidence," "permitting reasonable persons to reach such a result," *Hutcherson v. City of Phoenix*, 961 P.2d 449, 451 (Ariz. 1998) (en banc); or that "the jury misapplied the principles governing damages," *In re Estate of Hanscome*, 254 P.3d 397, 401 (Ariz. Ct. App. 2011).[2]

The district court appropriately identified and applied this two-step inquiry. It stated that: "If passion and prejudice tainted the jury's verdict, the court must grant a new trial." *Bachrach*, 2012 WL 2317768 at *1. Otherwise, "[r]emittitur is appropriate if there is a 'lack of evidence to support the damages awarded' . . . The evidence is viewed in the light most favorable to sustaining the verdict." *Id.* at *1 (quoting *Hanscome*, 354 P.3d at 402). It concluded that the verdict had not been tainted by passion or prejudice, but that, even when viewed in the light most favorable to the plaintiffs, the verdict was "irrationally high." *Id.* at *4. The district court based its decision on undisputed evidence in the record: Matthew and Randolph Bachrach had a complex relationship; that relationship had improved over the years, but in the year before Matthew died, the two spoke on the phone only occasionally and had not met in person at all—not even for the holidays. *Id.*

---

[2] Arizona courts have also allowed remittitur of *punitive* damages when the remittitur shocks the conscience. *See, e.g.*, *Haralson v. Fisher Surveying, Inc.*, 31 P.3d 114, 119–20 (Ariz. 2001) (en banc); *Acheson v. Shafter*, 490 P.2d 832, 835 (Ariz. 1971).

4

at *4. Based on this undisputed testimony, the district court concluded that their relationship could not support an award for compensatory damages that was "several times larger" than any other Arizona case cited by the parties involving the death of an adult child as the result of a similar type of accident. *Id.* at *4.[3] In short, the district court found that there was no substantial evidence supporting the amount of the jury's verdict. We have no basis on which to disturb that finding.

Bachrach argues that the judge abused his discretion by comparing the verdict in this case to verdicts in similar Arizona cases. He bases this argument on dicta from two Arizona Court of Appeals cases, which caution that careless verdict comparison can lead to undesirable results. *See Jones v. Pak-Mor Mfg. Co.*, 700 P.2d 830, 839 (Ariz. Ct. App. 1984) *approved in part, vacated in part*, 700 P.2d 819 (Ariz. 1985); *Wry v. Dial*, 503 P.2d 979, 990–91 (Ariz. Ct. App. 1972). In the intervening decades since these cases, however, the Arizona Supreme Court has not disavowed or expressed skepticism toward verdict comparison, and Arizona courts have in other instances compared verdicts in order to determine when otherwise intangible damages should be remitted. *See, e.g.*, *Desert Palm Surgical*

---

[3] The district court also considered one Arizona case, cited by the plaintiff, in which the adult child was murdered. As the district court noted, however, the manner of death was "quite different" than a motor vehicle accident which "could affect the jury's analysis." *Bachrach*, 2012 WL2317768, at *4.

5

*Grp., P.L.C. v. Petta*, 343 P.3d 438, 454 (Ariz. Ct. App. 2015); *Rincon v. Rumsey*, 2010 Ariz. Super. LEXIS 1176, at 27–30 (Pima Cty. Super. Ct. May 26, 2010).

Here, the district judge did not base his decision on the kind of careless verdict comparison of which the Arizona Courts of Appeals warned.  Instead, he used verdicts in Arizona cases brought by one or more parents involving the death of an adult child following an automobile accident.  Sixteen of the 19 verdicts involved awards of less than $1 million.  Of these, 11 verdicts involved awards of $200,000 or less.  As to the remaining verdicts, no parent received more than $1.5 million.  *Bachrach*, 2012 WL 2317768, at *3.[4]  Thus, the highest comparable Arizona verdict was less than half of the amount awarded to Bachrach.  *Id.*  After concluding that the $3.718 million verdict in this case was exceptionally large, the

[4]  The verdicts considered by the district court were those submitted to it by the parties.  The district court, however, rejected almost all of the plaintiffs' cases because they were not Arizona cases.  In comparison, all of the cases cited by the defendants were taken from the Trial Reporter, Compendium of Central and Northern Arizona and from the Compendium of Southern Arizona for the years 1999–2009, and were verdicts in which the jury awarded one or both parents compensatory damages for the wrongful death of their adult, male child after an automobile accident.  According to the sworn declaration of the defendant's attorney, the defendants cited all of the cases in the Compendia fitting this description in their remittitur motion.  In one of the three cases in which $1 million or more was awarded, the parent received $1.5 million for the death of her 19-year-old son.  In another, each of the child's parents received that sum after their son, a young Air Force Academy graduate, was struck by a commercial truck while riding his motorcycle.  In the third, each parent received $500,000, making a total of $1 million.

judge then examined the evidence and determined that it did not support such an objectively large verdict. Since the district judge's selection of cases was neither arbitrary nor unreasonable, and because he did not rely solely on verdict comparison in granting the remittitur, but also determined that there was not substantial evidence that justified the amount of damages, we cannot conclude that his decision constituted an abuse of discretion. Accordingly, we affirm.

2. Bachrach also argues that the district court improperly granted partial summary judgment with respect to his claim for punitive damages. He requests a reversal of this judgment and a new trial solely on this issue. We review grants of partial summary judgment de novo. *Amdahl Corp. v. Profit Freight Sys., Inc.*, 65 F.3d 144, 146 (9th Cir. 1995).

In Arizona, punitive damages are only appropriate when the plaintiff can prove that "defendant's evil hand was guided by an evil mind." *Volz v. Coleman Co., Inc.*, 748 P.2d 1191, 1194 (Ariz. 1987) (en banc) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986)). This standard requires "'something more' than gross negligence" or "mere reckless disregard of the circumstances." *Id.* Instead, the plaintiff must show, by clear and convincing evidence, that the defendant acted with either "1) evil actions; 2) spiteful motives; or 3) outrageous,

7

oppressive, or intolerable conduct that creates substantial risk of tremendous harm to others." *Id.*

To justify his claim for punitive damages, Bachrach argued that the accident was the result of Simister falling asleep at the wheel. Falling asleep, however, cannot be sufficient to show that either Simister or Covenant acted with an "evil mind." Bachrach failed to introduce other evidence that, coupled with the evidence that Simister fell asleep, would have been sufficient to raise a material issue of fact that either Simister or Covenant had the requisite mens rea to justify punitive damages.[5] Accordingly, the district court appropriately granted summary judgment.

**AFFIRMED.**

---

[5] It is quite possible that, under Arizona law, someone who fell asleep at the wheel after knowingly driving in excess of regulations limiting the number of hours a person may operate a vehicle would have the requisite mens rea. *See Quintero v. Rogers*, 212 P.3d 874, 880 (Ariz. Ct. App. 2009); *Olson v. Walker*, 781 P.2d 1015, 1019 (Ariz. Ct. App. 1989). Bachrach, however, did not produce any evidence that suggests this was so. Indeed, Simister's logbook showed that he had been driving for less than the maximum hours of service, and the evidence Bachrach produced to show that the logbook was falsified actually shows that Simister had been driving for even less than the hours logged.

*Bachrach v. Covenant Transportation*, No. 13-16363

MCKEOWN, J., dissenting:

I respectfully dissent; I would reverse the remittitur.  Under Arizona law, a court may grant remittitur only if:  (1) The verdict is "so manifestly unfair, unreasonable, and outrageous as to shock the conscience of the court." *Haralson v. Fisher Surveying, Inc.,* 201 Ariz. 1, 6 (2001) (citations omitted); (2) there is no "substantial evidence [] permitting reasonable persons to reach such a result." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53 (1998); or (3) "[t]he jury misapplied the principles governing damages." *In re Estate of Hanscome*, 227 Ariz. 158, 162 (Ct. App. 2011).  Although the district court correctly found that there was no passion or prejudice in the jury award, its decision ultimately was untethered from the applicable Arizona standards— concluding that the verdict was "excessively high," essentially re-weighing the evidence, and failing to give proper deference to the jury's determination.  *See Young Candy & Tobacco Co. v. Montoya*, 91 Ariz. 363, 369 (1962).