NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

MARIA CARMEN ZUBIA, *Plaintiff/Appellee/*
*Cross-Appellant*,

*v.*

DAVID SHAPIRO, et al., *Defendants/Appellants/*
*Cross-Appellees*.

No. 1 CA-CV 22-0201
FILED 3-14-2023

Appeal from the Superior Court in Maricopa County
No. CV2015-002563
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Fredenberg Beams LLC, Phoenix
By Daniel E. Fredenberg, Christian CM Beams
*Counsel for Defendant/Appellant/Cross-Appellee*

---

**MEMORANDUM DECISION**

Judge Maurice Portley[1] delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Brian Y. Furuya joined.

---

**P O R T L E Y**, Judge:

**¶1**        In this civil aiding and abetting fraudulent concealment case, we are asked to review the superior court's denial of the defendant's motions for judgment as a matter of law under Ariz. R. Civ. P. ("Rule") 50, and its partial denial and partial grant of defendant's motion for a new trial or remittitur under Rule 59.  We affirm the rulings because sufficient evidence supports the jury's verdict for the plaintiff and its finding in support of joint liability, and the  superior court properly reduced the jury's damages award to excise speculative amounts.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Maria Carmen Zubia sued Jose Juan Pena and others after she discovered that her signature had been forged on loan documents associated with a loan Pena received.  She asserted multiple claims, including a claim against David Shapiro for aiding and abetting concealment fraud.  The matter proceeded to a jury trial at which the parties presented evidence of the following facts.

**¶3**        In 1995, Zubia and her then-husband Pena purchased residential property in Waddell, Arizona ("the Residential Property") as joint tenants with right of survivorship.  They also rented a commercial property in Phoenix ("the Commercial Property") around the same time. They moved to Nevada in 2000 or 2001, but they did not sell the Residential Property.

**¶4**        Sometime around 2003 or 2004, Pena met Shapiro, a Nevada-based private lender.  Thereafter, Shapiro made many commercial loans to Pena over the years, but with Pena's blood relatives appearing to be the borrowers so Pena could avoid judgment creditors.  Zubia was never

---

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

named as a borrower, and she kept her finances separate from Pena throughout their marriage. Shapiro and Pena became close friends, and they discussed personal matters.

¶5        Zubia and Pena began living separately in 2006, and by late 2008, Pena had a new partner and children. In January 2008, Shapiro acknowledged that Pena signed a document with his signature over his daughter's typed signature line, by which the daughter purportedly authorized disbursement of an escrow deposit overage to herself and, in larger measure, to Pena. According to the daughter, she did not give Pena permission to sign the document for her, and Pena later told her that he applied the disbursement to money he owed Shapiro.

¶6        Later in 2008, Pena asked Shapiro for another loan. Before agreeing to the loan, Shapiro traveled from Nevada to inspect the Commercial Property. He and Pena also inspected the Residential Property, where they encountered Zubia's non-English-speaking parents. Shapiro then gave Pena $100,000 outside of escrow, and then directed his longtime loan processor to draft a deed of trust and promissory note for $150,000. According to Shapiro, he typically reviews such documents.

¶7        The promissory note, dated November 17, 2008, named both Pena and Zubia as the borrowers, as did the deed of trust. The only borrower address listed in the documents, however, belonged to Pena's parents, which Shapiro knew. And in a further irregularity, the deed of trust described the security by the Residential Property's legal description but the Commercial Property's address.

¶8        According to Shapiro, the note and deed of trust were sent only to the title company, with instructions that they be signed there consistent with normal practices. He testified that he has never seen a title company permit a borrower to remove a deed of trust from its office for outside notarization. But here, the deed of trust was not notarized at the title company's office. Instead, on November 21, 2008, Pena brought the document to a private Nevada notary who notarized only his signature. In fact, the notary crossed off Zubia's printed name, wrote his initials and the date beneath the strikethrough, and listed only Pena's name in his notary log. The notary acknowledged that nothing would prevent someone from signing for Zubia after the fact and attaching it to his notarization.

¶9        Shapiro recorded the deed of trust in Arizona in mid-January 2009. The recorded deed of trust bore same-page signatures for both Pena and Zubia but only the one notary stamp. The promissory note similarly

bore signatures for both Pena and Zubia. Zubia, however, testified that she had no knowledge of the loan, never would have agreed to it, and never received any communications regarding it despite Shapiro having her email and mailing addresses.

¶10 Zubia filed for legal separation from Pena in late 2009. A notice of default on the November 2008 note was sent to Pena's parents' address in October 2013, and a notice of trustee's sale for the Residential Property was recorded the next month. Zubia testified that when she discovered in December 2013 that the Residential Property was encumbered, she immediately called Shapiro, and set up an in-person meeting that he failed to attend. Shapiro contrastingly testified that he had called Zubia to notify her of delinquent payments on the loan much earlier, in mid-2010, and had met with her in person after she denied knowledge of the loan.

¶11 Pena quitclaimed his interest in the Residential Property to Zubia in mid-2014, in what she claimed was a separation settlement. In January 2015, the Residential Property was sold by trustee's sale to Shapiro for approximately $315,000. Zubia filed this litigation soon thereafter, seeking, among other things, to invalidate the trustee's sale. Shapiro eventually sold the Residential Property to a third party for $425,000, acknowledging that the litigation clouded title at the time of the sale.

¶12 At the close of Zubia's evidence, Shapiro moved for judgment as a matter of law on the aiding and abetting fraudulent concealment claim under Rule 50. The superior court expressed strong reservations about the sufficiency of the evidence regarding Shapiro's knowledge but took the motion under advisement and ultimately denied it after the close of all evidence.

¶13 By the time the case was submitted to the jury, the sole claim remaining was the aiding and abetting claim and Shapiro had identified Pena as a nonparty at fault. The jury was instructed on the elements of the tort and was asked by special interrogatory to find whether Shapiro and Pena had acted in concert. The jury was further instructed to determine whether Pena's fault would reduce a damages award, but it was not instructed on how to assess damages.

¶14 The jury returned a verdict for Zubia for damages of $640,000, with 45% of the fault attributed to Shapiro and 55% to Pena. The jury further found that Shapiro and Pena had acted in concert. In view of that

4

finding, the court entered judgment against Shapiro on the full amount of the verdict.

**¶15**      Shapiro thereafter filed a renewed motion for judgment as a matter of law under Rule 50, and a motion for a new trial or remittitur under Rule 59. After full briefing and oral argument, the superior court issued a detailed ruling denying the Rule 50 motion and granting the Rule 59 motion in part by reducing the damages award to $425,000.

**¶16**      Shapiro appeals from the rulings denying relief, and Zubia cross-appeals from the remittitur. We have jurisdiction under A.R.S. § 12-2101(A)(2) and (5)(a).

### DISCUSSION

**¶17**      A defendant is entitled to judgment as a matter of law or a new trial if a verdict for the plaintiff was not reasonably supported by sufficient evidence. Rule 50(a)–(b); Rule 59(a)(1)(H). We review rulings on motions for judgment as a matter of law *de novo* and rulings on motions for new trial for a manifest abuse of discretion, viewing the evidence in the light most favorable to affirming based on substantial evidence. *A Tumbling-T Ranches v. Flood Control Dist. Of Maricopa Cnty.*, 222 Ariz. 515, 524, ¶ 14 (App. 2009); *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996). We defer to the jury's determinations regarding witness credibility and the weight to give conflicting evidence. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 286 (App. 1983). The superior court properly may reduce the jury's damages award, however, if there is a "lack of evidence" to support it. *In re Estate of Hanscome*, 227 Ariz. 158, 162, ¶ 14 (App. 2011). We will affirm a reduction to the amount actually proved by non-speculative evidence. *Custom Roofing Co. v. Alling*, 146 Ariz. 388, 391 (App. 1985).

### I.      THE SUPERIOR COURT PROPERLY UPHELD THE VERDICT.

**¶18**      Shapiro does not dispute that Pena committed fraudulent concealment, which occurs when a party to a transaction conceals or by other action intentionally prevents the other party from acquiring material information. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496, ¶ 87 (2002). He contends, however, that he was entitled to judgment as a matter of law on the aiding and abetting claim because there was insufficient evidence of his scienter and participation.

**¶19** To establish a defendant's liability for aiding and abetting a primary tortfeasor, the plaintiff must show by a preponderance of the evidence that the defendant knew the primary tortfeasor's conduct constituted a tort and substantially assisted or encouraged him or her in accomplishing the tort. *Id.* at 485, 490, ¶¶ 34, 58 & n.16. The defendant's knowledge "may be inferred from the circumstances" and the evidentiary burden "may be satisfied by showing [the defendant's] general awareness of the primary tortfeasor's fraudulent scheme." *Dawson v. Withycombe*, 216 Ariz. 84, 102, ¶ 50 (App. 2007). Circumstantial evidence is just as probative as direct evidence. *Andrews v. Fry's Food Stores of Ariz.*, 160 Ariz. 93, 96 (App. 1989). The defendant's knowledge cannot, however, be shown by "pil[ing] inference upon inference" to "stretch[ ] the evidence presented beyond the bounds of circumstantial evidence." *Dawson*, 216 Ariz. at 103, ¶ 52. With respect to the substantial-assistance element, "substantial assistance . . . can take many forms, but means more than 'a little aid.'" *Wells Fargo*, 201 Ariz. at 488, ¶ 46.

**¶20** Shapiro contends that because he did not review the notarized deed of trust before its recording, he could not have known of any fraudulent concealment and a finding to the contrary would be based on impermissible inference-piling. We disagree.

**¶21** Sufficient circumstantial evidence supports the verdict. As an initial matter, the jury reasonably could infer based on the pair's friendship and past dealings that Shapiro knew of Pena's dubious financial situation, deteriorated marriage, and willingness to defraud family. Moreover, the jury reasonably could infer based on the evidence that Shapiro knew Pena planned to fraudulently conceal the particular loan transaction at issue here and substantially assisted him in doing so. As to this specific transaction, Shapiro gave Pena a large sum before agreeing to security or drawing up any legal documents to demonstrate the loan and secure it. The two men then traveled together from Nevada to Arizona to inspect potential security properties. Thereafter, it was Shapiro who directed the preparation of loan documents that contained several irregularities making Zubia's discovery of the transaction less probable. Namely, (1) the deed of trust used the legal description of the Residential Property but recited the Commercial Property's physical address, and (2) it listed the borrowers' address as one that Shapiro knew belonged to Pena's parents.

**¶22** Moreover, Shapiro acknowledged that he has never known a title company to permit borrowers to remove loan documents from the company's office for notarization. But Pena somehow obtained the deed of trust and had it privately notarized. It was reasonable for the jury to infer

that Shapiro knowingly included the deed of trust's irregularities and provided the document to Pena so that Pena could defraud Zubia. The months-long interlude between the notarization and the recording also supports an inference that Shapiro knew Zubia had not signed the deed of trust. And the evidence that Shapiro never contacted Zubia regarding defaults and failed to meet with her after she discovered the encumbrance further suggests his culpability.

¶23        Shapiro emphasizes that the superior court strongly questioned the sufficiency of the evidence when he first moved for judgment as a matter of law and characterized the issue as "an extremely close call" when denying the renewed motion. We recognize the only evidence of Shapiro's scienter and participation was circumstantial and the jury could have drawn different inferences. But that does not mean Shapiro was entitled to judgment as a matter of law.

## II.        THE SUPERIOR COURT PROPERLY UPHELD THE ACTING-IN-CONCERT FINDING.

¶24        Shapiro next contends that the evidence was insufficient to support the jury's finding that he acted in concert with Pena, as necessary to support joint liability under A.R.S. § 12-2506(D)(1). Acting in concert requires more than offering substantial assistance; it requires "entering into a conscious agreement to pursue a common plan or design to commit an intentional tort." A.R.S. § 12-2506(F)(1). The totality of the evidence described above was sufficient to support the finding that Shapiro did not merely assist Pena in his unlawful scheme, but instead consciously agreed to help him commit fraudulent concealment. Notably, the tortious conduct benefited Shapiro because it purportedly gave him a valuable security interest far in excess of the value of the loan he previously disbursed to Pena outside of escrow.

## III.        THE SUPERIOR COURT PROPERLY ORDERED REMITTITUR.

¶25        The parties finally dispute the reduction of the jury's damages award. Shapiro contends that the award should have been reduced to reflect that the community was enriched by the loan proceeds under A.R.S. § 25-211 because Pena received them while still married to Zubia. He waived that argument by not raising it until the motion for new trial. *See, e.g., Conant v. Whitney*, 190 Ariz. 290, 293–94 (App. 1997).

¶26        On cross-appeal, Zubia argues that the reduction of the award from $640,000 to $425,000 was improper. She contends that because Shapiro acknowledged that the sale of the Residential Property for $425,000

was under clouded title, the jury could properly determine that Zubia's damages exceeded the sale price. However, on this record, the jury's award of damages beyond the sale price was speculative—the jury was not instructed on calculating damages and received no evidence regarding the Residential Property's fair market value, the financial impact of a cloud on the title, or any evidence of damages beyond the loss of the Residential Property. Consequently, the superior court did not err by reducing the award.

**CONCLUSION**

**¶27**      We affirm the superior court's Rule 50 and Rule 59 rulings for the reasons set forth above. We deny the parties' competing requests for attorney's fees under A.R.S. § 12-341.01 and the deed of trust because this was a tort case merely incidental to a contract to which Zubia was never a party. *See Ramsey Air Meds., L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15–16, ¶ 27 (App. 2000). As the substantially prevailing party, Zubia may recover her costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-341; *Montano v. Luff*, 250 Ariz. 401, 407, ¶ 18 (App. 2020).



AMY M. WOOD • Clerk of the Court
FILED:    AA